**William M. WARD, Plaintiff-Appellee,**

v.

**BERRY & ASSOCIATES, INC., Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

Jan. 16, 1981.

Certiorari Denied by Supreme Court April 6, 1981.

Waller, Lansden, Dortch & Davis by Maclin Davis, Jr. and Alexander B. Buchanan, Nashville, for plaintiff-appellee.

Boult, Cummins, Conners & Berry by Richard Warren, Jr. and Thomas B. Cresswell, Jr., Nashville, for defendant-appellant.

## ABRIDGED OPINION

TODD, Presiding Judge.

The defendant, Berry & Associates, Inc., has appealed from the Chancellor's decree awarding judgment to the plaintiff, William H. Ward, in the amount of $8,800 for salary and bonus due plaintiff under a contract of employment.

Plaintiff's suit is based upon a letter written to him by defendant on May 26, 1978, as follows:

Dear Bill:

Pursuant to our recent conversations, mutual decisions and agreements regarding your employment with Berry and Associates, Inc., I would like to take this opportunity to reduce to writing my understanding for both our benefits.

It is understood and agreed that your direct compensation will be $2,000 per month for the first year of your employment. In addition, it is understood that you should earn a bonus of at least $6,000

on, or before, June 1, 1979. The amount of this bonus will be determined by the amount of the fees which we will be able to generate as a result of your services to our clients. There is no formal bonus arrangement and such will be determined solely by me on an individual basis. Berry and Associates, Inc., will pay the premiums for your coverage under the major medical plan presently carried with the Travelers Insurance Company. It is anticipated that you will pay the premiums for your family coverage under this plan on a monthly basis.

As I mentioned during our discussion, I expect that you will have the opportunity to purchase a 10% interest in the firm after a reasonable period of employment at a price to be determined and agreed upon between the two of us. Such a sale of stock would be pursuant to your agreeing that Berry and Associates offers a continuing employment opportunity for you and that we would agree that there are mutual benefits to continuing and further developing our employee/employer relationship. In no event will the offers of such stock occur prior to one year of full employment.

I trust that this letter clearly outlines the terms which we discussed. I am very happy to have you coming as a member of our firm, and I hope that our association will be mutually beneficial, rewarding and satisfying.

On June 12, 1978, plaintiff entered the employ of defendant and continued such employment until April 30, 1979, when he was discharged. He was paid at the rate of $2,000 per month to the date of his discharge. Plaintiff claimed and the Chancellor allowed salary of $2,800 for the period, May 1–June 12, 1979, and $6,000 bonus, making a total of $8,800.

Appellant first complains that the Chancellor held the above quoted letter to be unambiguous but excluded evidence of the intention of the parties.

■ Parol evidence is not admissible to remove a patent ambiguity but is admissible to remove a latent ambiguity. *White v.*

*Kaminsky,* 196 Tenn. 180, 264 S.W.2d 813 (1954) and authorities cited therein.

■ A patent ambiguity is one produced by the uncertainty, contradictoriness or deficiency of the language of an instrument, so that no discovery of facts or proof of declarations can restore the doubtful sense without adding ideas which the words do not sustain. A latent ambiguity is one where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used. *Teague v. Sowder,* 121 Tenn. 132, 114 S.W. 484 (1908).

■ The letter, quoted above, appears to be the final documentary expression of the agreement of the parties. Even though plaintiff did not sign it, he accepted it, acted upon it and now relies upon it in the present suit. The defendant, who did sign it and dealt under its terms is hardly in position to deny (and does not deny) that it was and is the evidence of the agreement of the parties. To the extent that the letter speaks unequivocally and certainly, it must be accepted as conclusive without oral contradiction. To the extent, if any, that the meaning of the words is uncertain, then it is permissible to show by communications between the parties or other circumstances what the *mutual* intent of the parties was, not inconsistent with the words in question. To the extent that the words show unequivocally that there was no agreement as to a given matter, then evidence to supply the omission is not admissible except to show that the parties did, by separate communication and agreement, make separate provision for the matters not provided for in the writing. *Fulton v. Tennessee Walking Horse Breeders' Asso. of America,* 63 Tenn. App. 569, 476 S.W.2d 644 (1971).

However, the mutual intent of the parties is not shown by mere evidence of how one party "felt," or "intended" or "understood" or "believed" about the terms of an agreement; nor is such evidence competent to show the mutual intent of the parties unless communicated to the opposite party and assented to by him.

In the present case, the provision of a fixed monthly salary "for the first year," and mention of a year-end bonus strongly imply employment for at least a year and, absent some satisfactory explanation in the form of communications or dealings between the parties or other circumstances known to both, the obvious meaning of the verbiage is controlling.

The language relating to a bonus is equally unambiguous. The clear import of the language is:

"I would expect you to produce enough income during the first year to justify me in awarding you a bonus of $6,000; however, I make no commitment to you in this regard, but reserve the right to determine what bonus, if any, I will give you."

Defendant's tender of excluded evidence is as follows:

Q. Mr. Berry, what is your understanding and interpretation of those terms? What was your understanding reflected by the words set forth in this letter introduced as Exhibit 1?

A. That Bill Ward would be paid a monthly salary of two-thousand dollars a month. He would be paid a bonus at the end of the year based on his performance and if his performance was comparable to the performance of other people in our firm, then that should be somewhere in the range of six-thousand dollars. That was a part of our discussion in our third meeting, in describing to him the amount of fees that other employees in my firm had earned and in comparing that to what he should be able to do.

The proffered testimony does not identify a latent ambiguity not apparent on the face of the letter, nor does it state any communication between the parties or other circumstance which would reflect upon the *mutual* intent and understanding of the parties.

An intent or understanding of one party to a contract, uncommunicated to the other by word, action or circumstance, cannot have any binding effect upon the other. 17A C.J.S., *Contracts,* § 295h, pp. 66, 67.

Appellant's first complaint presents no ground for reversal.

Appellant next complains that the Chancellor construed the above quoted letter against defendant after holding that the letter was unambiguous.

At the conclusion of the trial, the Chancellor stated orally:

... the clear language is that this was a contract for a year. The Court also is of the opinion that the Defendant failed to carry the burden of proof that the Plaintiff was discharged for just cause. Also, the language appears to be clear that the Defendant agreed to pay the Plaintiff a bonus of at least six-thousand dollars on or before June 1st, 1979.

It is true that the Chancellor referred to the rule of construing or resolving *ambiguities* unfavorably to the drafter. However, the Chancellor found no ambiguity, for he stated, "... the clear language is that it was a contract for a year ... the language appears to be clear that defendant agreed to pay the plaintiff a bonus."

Thus, any reference to construction of ambiguous contracts was surplusage and immaterial to the action of the Chancellor in *interpreting* the clear language of the writing.

It is true that the Chancellor interpreted the clear language of the letter adversely to the insistence and interpretation of the defendant. However, this was not an application of the rule for resolving ambiguities against the drafter, but simply a matter of interpreting an unambiguous instrument without regard to the source of the instrument.

■ This Court concurs in the Chancellor's view that, uncontradicted by any competent evidence of a latent ambiguity and evidence in explanation of the verbiage, the letter demonstrates an employment contract for at least one year.

■ A hiring at so much per week or month or year is a hiring for that period, provided there are no circumstances to the contrary. *Delzell v. Pope*, 200 Tenn. 641, 294 S.W.2d 690 (1956).

A commitment to pay $2,000 per month during the first year accompanied by a statement that "you should earn a bonus the first year," unexplained or contradicted by any competent evidence, is also indication of an intent to hire for at least a year.

Appellant's second complaint states no ground for reversal.

■ Appellant next insists that the Chancellor erred in failing to find that there was just cause for the discharge of plaintiff. Appellant relies upon the testimony of plaintiff that he never secured any new customers and never completed work on any particular "project." Defendant is in the business of assisting borrowers in securing loans from a federal loan agency. The work of plaintiff included "selling," or procuring customers to use defendant's service and "servicing," or actual preparation and prosecution of the customer's loan application. No charge is made for the time of employees spent in "selling" prior to actual employment by the borrower unless the "sale" is made. If the borrower does employ defendant, then the borrower is billed for an hourly charge for all time consumed in selling and servicing.

The evidence shows that plaintiff worked five days a week from 8:30 a. m. to 5:00 p. m. from his employment to discharge; that defendant collected from customers $32,-895.00 as hourly charges for plaintiff's services during his 10⅚ months employment; that plaintiff received $21,384.65 in compensation; and that plaintiff performed whatever specific tasks were assigned to him.

There is testimony that plaintiff's superior was dissatisfied with the quality and quantity of plaintiff's work, but there is no evidence that plaintiff ever failed or refused to perform any particular task assigned to him or that his performance of any specific task was ever deficient in any specific respect.

The judgment of the Chancellor comes to this Court for review de novo upon the record accompanied by a presumption of correctness unless the evidence preponderates otherwise. T.C.A. § 27–3–103, Rule 13(d) T.R.A.P.

In regard to grounds for discharge, the evidence does not preponderate against the finding of the Chancellor with which this Court concurs.

The fourth complaint of appellant is respectfully overruled.

Finally, appellant complains that the Chancellor erred in finding that the agreement bound defendant to pay a $6,000 bonus.

■ This Court respectfully disagrees with the view of the Chancellor that plaintiff had a contractual right to the bonus. The letter, quoted above, does not state that, "you *will*, or *must*, or *shall* receive a bonus" or that, "you shall be entitled to a bonus." The words, "you should," simply means, "you ought to," or "it would ordinarily be expected that you would." This does not imply an unequivocal promise to pay a bonus, especially in view of the subsequent words, "There is no formal bonus arrangement and such will be determined by me on an individual basis."

The reference to determination of bonus by amount of fees generated suggests the computation of a bonus upon some percentage basis, but no percentage or other standard is specified in the letter, and there is no evidence that the parties intended that any particular formula should apply.

On its face, the letter fails to establish a contractual right to a bonus, and the evidence fails to show any such right arising from any other communication or actions of the parties.

Appellant's final complaint is therefore sustained, and the judgment will be modified accordingly.

The judgment is modified by reducing it from $8,800 to $2,800. As modified, it is affirmed. Each party is taxed with one half of the costs of this appeal. The cause is remanded for the enforcement of the judgment and for such other proceedings as may be necessary and proper.

Modified and affirmed.

LEWIS and CANTRELL, JJ., concur.