IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2004 Session

## JEFFREY P. HOPMAYER v. ALADDIN INDUSTRIES, LLC

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-85-I     Irvin Kilcrease, Chancellor**

_____

**No. M2003-01583-COA-R3-CV - Filed June 9, 2004**

_____

Plaintiff filed suit alleging Defendant breached its employment contract by failing to provide
Plaintiff with phantom units when Plaintiff was terminated without cause. Defendant denied that
Plaintiff's phantom units had vested, and therefore, Plaintiff was not entitled to any phantom units
at the time of his termination. The trial court found that the letter memorializing the Defendant's
offer of employment was sufficiently definite and met the other requirements for a valid contract,
including mutual assent. The trial court also found that the terms of the employment contract did
not include any vesting requirements for Plaintiff's phantom units. As a result, the trial court found
that Defendant had breached its employment contract and awarded Plaintiff the value of his phantom
units contained in the employment agreement plus pre-judgment interest dating back to Plaintiff's
termination. Defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and
Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S.,
and ALAN E. HIGHERS, J., joined.

William N. Ozier, Nashville, Tennessee, for the appellant, Aladdin Industries, LLC.

George H. Nolan and Jonathan D. Rose, Nashville, Tennessee, for the appellee, Jeffrey S. Hopmayer.

**OPINION**

In May of 1999, Defendant, Aladdin Industries (Aladdin) hired Ari Chaney (Chaney) as
its new Chief Executive Officer. One of his duties was to hire a new management team for
Aladdin. In December of 1999, Aladdin mailed an offer of employment (agreement) to Plaintiff,
Jeffrey Hopmayer (Hopmayer). The agreement provided in pertinent part:

[Aladdin company logo]

December 21, 1999

Jeffrey S. Hopmayer
751 Waterford Drive
Des Plaines, Illinois 60016

Dear Jeffrey:

It is with a great deal of pleasure that I offer to you employment on behalf of
Aladdin Industries, LLC, effective January 5, 2000.

Position:       **Vice President, Sales**
Salary:         . . .

In addition to your base salary . . . .

*A phantom unit[1] plan will be adopted by the Board of Managers in which you will
be granted 4,000 phantom units with an initial value of $40.00 per unit.*

. . . .

In the event you should leave Aladdin for reasons other than through your own
volition, you will receive a severance package equal to your last 12 months salary
and bonus.

. . . .

Jeff, all of us who have spoken with you are very excited about you joining us.
We feel certain the professional and personal goals you seek will be achieved here
at Aladdin.

Sincerely,
/s/ Ari Chaney
Ari Chaney
CEO

---

[1] Appellee's brief contains the following description of phantom units:

Phantom units are a type of executive compensation used by limited liability companies like Aladdin
in order to provide their executives with the equivalent of an equity stake in the company. The
advantage of using phantom units to compensate executives is that those units provide the monetary
equivalent of equity in the company without providing voting rights or corporate dividends to the
executive employee.

(Citing David S. Foster & Walter M. Kollings, *Compensation Planning for Executives in a New Environment:
Promoting a Sense Ownership*, 329 PLI/Tax 339, 376 (1992)).

(Emphasis added.)  Hopmayer signed the agreement, subsequently moved to Nashville from Chicago, and began working for Aladdin on January 3, 2000.  In December of 2000, Aladdin terminated Hopmayer as part of a corporate reorganization.  In his termination letter, Aladdin told Hopmayer that his phantom units had neither vested nor appreciated.  Hopmayer brought suit against Aladdin for breach of contract based on the agreement.  Hopmayer amended his complaint to add a claim that Hopmayer was induced to work for Aladdin by false and deceptive representations in violation of Tenn. Code Ann. § 50-1-102 (1999).  The case was tried on March 12, 2003.  On May 6, 2003, the court entered a memorandum decision finding that the phantom unit provision of the agreement was sufficiently definite and met the other requirements for a valid contract, including mutual assent.  The trial court further found that Hopmayer was to receive 4,000 phantom units without any conditions, such as appreciation or vesting requirements.  As a result, the trial court awarded Hopmayer damages in the amount of $160,000 and prejudgment interest (10%) dating back to his December of 2000 termination.  The court denied Hopmayer's claim that he was induced to work for Aladdin by false and deceptive representations in violation of Tenn. Code Ann. § 50-1-102 (1999).  Aladdin timely filed its notice of appeal.  The trial court approved a *supersedeas bond* in the amount of $230,000 on June 25, 2003.

## Issues Presented

Aladdin appeals and raises the following issues, as we restate them, for our review:

1.      Whether the trial court erred in holding that the offer of 4,000 phantom units to Hopmayer pursuant to the agreement was sufficiently definite to be enforceable.

2.      Whether the trial court erred in holding that the 4,000 phantom units were not subject to vesting requirements and if so, whether Hopmayer failed to meet those vesting requirements before his termination.

3.      Whether the trial court erred in holding that Hopmayer was to receive the initial value, $160,000, rather than the appreciation value of the phantom units.

Hopmayer raises the additional issue, as we restate it, for our review:

1.      Whether the trial court erred by holding that Aladdin did not violate Tenn. Code Ann. § 50-1-102 and whether Hopmayer is entitled to reasonable attorney's fees pursuant to Tenn. Code Ann. § 50-1-102(c)(2).

## Standard of Review

Our review of a trial court's conclusions on issues of law is *de novo*, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). Our review of a trial court's finding on issues of fact is *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569. Where the trial court makes no specific findings of fact on a matter, we must review the record to determine where the preponderance of the evidence lies and accord no presumption of correctness to the conclusion of the court below. *Kendrick*, 90 S.W.3d at 569.

## Sufficiently Definite and Mutual Assent

Aladdin appeals and contends that the trial court committed error by enforcing the agreement when there was no mutual assent between the parties and the agreement was not sufficiently definite to be enforceable. In *Higgins v. Oil, Chemical and Atomic Workers International Union, Local #3-677*, 811 S.W.2d 875 (Tenn. 1991), the court stated:

> The requirements for a valid contract are well-settled:
> While a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

*Higgins*, 811 S.W.2d at 879 (quoting *Johnson v. Cent. Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (Tenn. 1962) (citing *Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry. Co.*, 134 S.W. 613, 613 (Tenn. 1911))). In determining whether mutual assent exists, "the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on whether their outward expression of assent is sufficient to form a contract." Samuel Williston, *A Treatise on the Law of Contracts* § 4:1 (4th ed. 1990).

Aladdin contends that the agreement that "[a] phantom unit plan will be adopted by the Board of Managers in which you will be granted 4,000 phantom units with an initial value of $40.00 per unit" could not be mutually assented to because "many details associated with those units had to be fleshed out in the 'plan.'" Aladdin contends that, because the new plan had not been adopted at the time of the agreement, the issuance of phantom units would be under the terms of Aladdin's previous phantom unit plan. Under that plan, the phantom units would not vest until three completed years of employment, and the redemption of those units would be the difference between the initial value of the units and any appreciation. However, there is nothing in the record to indicate that Hopmayer was ever informed of either form of the plan, the vesting requirements, or that he would only be entitled to the appreciation of the unit's value. To the contrary, Hopmayer testified that he was told nothing about a plan for the phantom units and his understanding was that he would receive $160,000 representing the value of the phantom units. Further, Aladdin's Vice President for Human Resources, Lillian Jenkins (Jenkins), testified that

she did not know whether Hopmayer received a copy of an Aladdin phantom unit plan. Aladdin relies upon deposition testimony given by Chaney concerning his discussions with Hopmayer, but the Chaney deposition is not contained in the record. "The appellant has the primary burden to see that a proper record is prepared on appeal and filed in this Court." *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989) (citing Tenn. R. App. P. 24).

The "secret, unexpressed intent of one party to a contract is not binding upon the other party who has no notice of the secret intent." *Cone Oil Co. v. Green*, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983) (citing *Ward v. Berry & Assocs., Inc.*, 614 S.W.2d 372 (Tenn. Ct. App. 1981)). "[T]he outward expression" of Hopmayer's and Aladdin's assent is that contained in the agreement:

> A phantom unit plan will be adopted by the Board of Managers in which you will be granted 4,000 phantom units with an initial value of $40.00 per unit.

The trial court stated that "[a]fter careful consideration of the entire record, including the arguments of counsel and the credibility of the testimony presented at trial, this Court holds that the Agreement includes [the requirements as enumerated in *Higgins*], including mutual assent . . . and holds the Agreement sufficiently definite to be an enforceable contract." We agree. The phantom unit provision of the agreement is sufficiently definite and a result of mutual assent between the parties.

## Vesting and Appreciation Requirements

Aladdin contends that if this Court is to hold that the phantom unit provision is enforceable, the trial court still erred in finding that Aladdin breached the agreement because the phantom units had not vested upon Hopmayer's termination and the trial court awarded the initial rather than the appreciation phantom unit value. The phantom unit provision provides:

> A phantom unit plan will be adopted by the Board of Managers in which you will be granted 4,000 phantom units with an initial value of $40.00 per unit.

There is nothing from the language in the agreement, drafted by Aladdin, to indicate that the phantom units are subject to any vesting requirements. Aladdin contends that the language "initial value" means that Hopmayer would only receive the value of the appreciation of the phantom units. However, we read the provision the same as if Aladdin promised that Hopmayer "would receive a salary with an initial value of $100." Aladdin, "as the drafter of the Employment Agreement . . . must take responsibility for its allegedly ambiguous provision[]." *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 678 (Tenn. Ct. App. 1995). Aladdin could have clearly stated that the phantom units were subject to vesting requirements and that Hopmayer was entitled only to the appreciation value of the phantom units, but it did not. Further, as previously stated, there is nothing in the record to indicate that Hopmayer had any other understanding of the phantom unit plan than that embodied in the agreement. Accordingly,

we affirm the decision of the trial court finding that the terms of the agreement were that Hopmayer was to receive 4,000 phantom units with a value of $40.00 each without any additional vesting or appreciation requirements and that Aladdin breached that agreement by not paying Hopmayer the value of the phantom units upon his termination.

## Tenn. Code Ann. § 50-1-102

Hopmayer raises the additional issue of whether the trial court erred in denying his claim for damages under Tenn. Code Ann. § 50-1-102 and attorney's fees pursuant to that section. In his brief, Hopmayer concedes that his claim under this section only applies if we held that the agreement was insufficiently definite. In view of our holding that the phantom unit provision is sufficiently definite to be enforceable, this issue is pretermitted. Accordingly, we affirm the decision of the trial court denying Hopmayer's claim under § 50-1-102.

## Conclusion

In light of the foregoing, we affirm the decision of the trial court holding that the phantom unit provision of the agreement is sufficiently definite and a result of mutual assent to be enforceable, that Aladdin breached the phantom unit provision, that Hopmayer is entitled to damages in the amount of $160,000 plus prejudgment interest dating back to his December of 2000 termination, and that Hopmayer is not entitled to relief under Tenn. Code Ann. § 50-1-102. Costs of this appeal are taxed to the Appellant, Aladdin Industries, LLC, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE