IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 7, 2010 Session

# CENTURY FIRE PROTECTION, LLC., v. FOWLERS' HOLDINGS, LLLP., et al.

**Appeal from the Chancery Court for  Loudon County**
**No. 11214      Hon. Frank V. Williams, III., Chancellor**

---

**No. E2009-02199-COA-R3-CV - FILED SEPTEMBER 16, 2010**

---

Plaintiff alleged that it delivered materials and provided labor for the installation of a fire protection system on the property of defendant and defendant had failed to pay money still owed under the contract.  Plaintiff sought a materialmen's lien to enforce any judgment obtained against defendant for the amount of monies owed under the contract.  Defendants answered, filed a counter-complaint and raised multiple defenses.  The Trial Court conducted an evidentiary hearing and ruled in plaintiff's favor, holding that plaintiff was entitled to recover monetary damages and the materialmen's lien would be enforced.  Defendants have appealed and we affirm the Judgment of the Trial Court.


 **Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.


T. Scott Jones and Mandy  M. Hancock, Knoxville, Tennessee, for the appellants, Fowlers' Holdings, LLLP., Fowler's Furniture, Inc., Atlantic Southern Bank, and Douglas S. Yates, as Trustee for Atlantic Southern Bank.

Mary Beth Hagan, Murfreesboro, Tennessee, for the appellee, Century Fire Protection, LLC.

# OPINION

Plaintiff, Century Fire Protection, LLC, filed a Verified Complaint to Enforce Mechanics' and Materialmen's Lien against defendants, Fowlers' Holdings, LLLP; Fowler's Furniture, Inc.; Atlantic Southern Bank; and Douglas S. Yates, as trustee for Atlantic Southern Bank. Plaintiff alleged that Fowlers' owned property in Lenoir City, and contracted with plaintiff on July 25, 2006, to provide labor and materials for the installation of a fire protection system on the property, and that it had fully performed its obligations under the contract, and had improved the value of the property. Plaintiff further alleged that Fowlers' still owed $23,250.00 under the contract, and had refused to pay. Plaintiff alleged that it had sent a notice of lien to defendants on February 22, 2008, and had filed the same with the Register's Office and sought to have its lien declared superior to all others, and to be enforced.

Defendants answered and filed a Counter-Complaint, and stated that plaintiff had failed to state a claim and had failed to join an indispensable party. They also asserted the defenses of failure of mutual assent, failure to mitigate, setoff, waiver, estoppel, and unclean hands. The Counter-Complaint avers that there were change orders made to the original contract and that they were to be given credits for certain items, but Century overbilled them and they overpaid in the amount of $54,779.00. They further alleged the work performed was defective, and that they had incurred additional expenses repairing plaintiff's defective work, and that part of their inventory was damaged by leaking sprinkler heads installed by plaintiff.

Defendants sought compensatory and punitive damages, and asked that plaintiff's lien be removed.

The trial of the matter was held on August 26, 2009, and numerous witnesses testified for the respective parties.

Upon completion of the evidence, the Trial Court ruled that the contract contained a latent ambiguity regarding who was responsible for digging a trench. The court said the weight of the evidence showed that digging the trench was going to be a problem, and that Century expected to be able to take advantage of lines that were being dug by Fowlers' for other purposes. The Court found that Fowlers' was going to have to dig lines for plumbing and electricity in any event, and found that the plaintiff could not collect for the things it had no written change orders for, and that Fowlers' could also not collect for damage to certain furniture that they claimed in depositions.

The Court then ruled that plaintiff was due an additional $18,000.00 under the contract, minus $2,000.00 for damaged furniture. The Court ruled that the change orders signed by Horrax were ratified, and that plaintiff was due a reasonable amount of attorney's fees, but not the entire amount claimed. The Court subsequently ruled that plaintiff's attorney would receive a fee of $18,000.00 plus $1,000.00 for expenses, and dismissed all other claims.

In conclusion, the Court found that plaintiff's lien had priority over all other encumbrances on the property, and plaintiff then filed a Motion for Discretionary Costs, which the Trial Court granted, and defendants have appealed.

The issues presented for appeal are:

1.      Whether the Trial Court properly awarded damages to Century in the amount of $18,000.00?

2.      Whether the Trial Court properly awarded Century attorney's fees of $19,000.00?

3.      Whether Century should have a lien against the property?

4.      Whether Century should be awarded attorney's fees on appeal?

Defendants contend that the Trial Court's award of $18,000.00 to plaintiff for damages under the contract was improper, because the change orders added to the contract total were not signed by an authorized representative of Fowlers' and that the Trial Court did not properly give credit for the mezzanine or trenching.

As to the change orders signed by Mr. Horrax, both Mr. Long and Mr. Fowler admitted that he was Fowlers' employee and that he was in charge of supervising the job when Mr. Long could not be there, but they testified he did not have the authority to sign contracts or otherwise bind the company in these agreements. Long admitted, however, that Mr. Horrax discussed the purchase of the gravel with him, that he knew that Horrax was signing the change orders on behalf of Fowlers', and that he also knew that the additional work detailed on the change orders was being done. Long admitted that he received the change orders from Horrax and then gave them to Mr. Fowler. Similarly, when asked if he had seen the change orders signed by Horrax, Mr. Fowler said he didn't look at those daily because he would "presume that Robbie and Paul (Horrax) was more abreast of what was going on out there and was depending on them to see that was done." Neither Long nor Fowler disputed that the work on these change orders was done and that it was necessary for

completion of the job. Also, neither one of them at any time told any agent of Century that Mr. Horrax did not have the authority to act for the company nor that these change orders were unacceptable.

As our Supreme Court has explained:

'Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency.'

Generally, to prove apparent agency one must establish (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment.

Apparent authority is established through the acts of the principal rather than those of the agent or through the perception of a third party. *In Southern Ry. Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675 (1917), this Court explained:

The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.

Id. at 677 (quoting 2 Corpus Juris 574, 575).

*Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 433 (Tenn. 2008)(internal citations omitted).

Here, the Trial Court found that the change orders signed by Mr. Horrax were ratified by Fowlers', and the evidence does not preponderate against this finding. Tenn. R. App. P.. 13(d). Both Mr. Long and Mr. Fowler testified that they knew that Mr. Horrax was signing change orders for Century while acting as construction supervisor on this project, and they admitted acquiescence in same. Neither claimed to have disputed Mr. Horrax's authority to sign these change orders nor that the work done thereunder was improper or unnecessary.

-4-

Accordingly, Mr. Horrax acted with apparent authority given him by Mr. Long and Mr. Fowler, and Century justifiably relied on the same in getting these change orders signed and it believed they would be paid. We agree with the Trial Court's conclusion on this issue.

As to the trenching credit, the Trial Court found that the contract contained a latent ambiguity regarding who was to be responsible for trenching the water lines, Century or Fowlers'. The contract states that if 1120 feet of water line was installed by Century, this would add $36,000.00 to the price. The contract does not specifically provide that trenching would be done by Century, nor does it specifically exclude it. The contract is silent on the issue of who would provide the trenching/backfilling of this water line.

DeWayne Spencer testified that he attended the meeting with Mr. Fowler before the contract was signed, wherein he claimed that Mr. Fowler told them to price the job with Fowlers' being responsible for the trenching/backfilling. Gary Daniels testified that he was told by Mr. Horrax that Fowlers' was doing the excavation for the water lines when they began work on the site. Long and Fowler both denied telling Century that Fowlers' would be responsible for the excavation, although they admitted that they were handling the excavation for the plumbing and electrical lines. Both of them admitted that Fowlers' did handle most of the excavation as an accommodation to Century, however, with the understanding that they would receive some monetary credit for it.

Michael Duncan, owner of Tennessee Automatic Sprinkler, was called as an expert on behalf of Fowlers', and he originally testified that he would have thought Century's contract included trenching and backfilling due to the expense allotted for running the water line in the contract. He testified that $36,000.00 was too much for simply laying and connecting the line. He admitted, however, that he had specifically excluded the trenching on his estimate because the jobsite looked as thought that work would be very difficult. He also admitted that his estimate for running water line was actually higher than Century's even with the trenching specifically excluded, thus seemingly creating a conflict with his earlier testimony regarding expense. The subcontractor employed by Fowlers' to do the trenching for the water line testified that the regular plumbing lines and electrical lines were put into the same trench.

The Trial Court found that while the contract contained a latent ambiguity regarding who was to provide the trenching, the weight of the evidence showed that Fowlers' had agreed to provide the same because they were already going to have to dig the trench for the regular water and electrical lines anyway. The Court found that Century knew that digging the trench was going to be a problem, and that this was not included in their contract price.

The evidence does not preponderate against the Trial Court's findings. There is no

question that Fowlers' own expert admitted that trenching on this site would be difficult, and that his own estimate was higher per square foot for installing the line than Century's even though he specifically excluded trenching, which conflicted with his earlier testimony that the price quoted by Century should include trenching. Moreover, Century's employees testified that Fowlers' was to provide the trenching, and that Mr. Fowler had asked them to price the contract with Fowlers' providing the same. The proof demonstrated that Fowlers' did, in fact, provide the same, and that the same trench was dug not only for the sprinkler lines but also for the regular water and electrical lines as well, and these lines were clearly Fowlers' responsibility to trench. Long and Fowler disputed that Fowlers' was to provide the trenching for the sprinkler lines, but the Trial Court obviously did not credit their testimony. The evidence does not preponderate against the Trial Court's finding that Century was not to provide the trenching as a part of the contract. Tenn. R. App. P. 13(d).

Next, Fowlers' argues that it was error for the Trial Court to consider parol evidence in interpreting this contract. The Trial Court found, however, that the contract contained a latent ambiguity. As stated by the Supreme Court:

A latent ambiguity is where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby then will fairly comport with the ordinary or legal sense of the words and phrases made use of.

*Teague v. Sowder*, 114 S.W. 484, 488 (1908).

In this case, the contract did contain a latent ambiguity, because the language contained in the contract does create a latent ambiguity, in that the line would have to be trenched and backfilled in addition to being laid or installed created a question of who would be responsible for trenching and backfilling. Accordingly, a latent ambiguity in a contract may be explained by the use of parol evidence. *Ward v. Berry & Associates, Inc.*, 614 S.W.2d 372 (Tenn. Ct. App. 1981). The Trial Court properly allowed parol evidence on this issue.

Finally, regarding the mezzanine credit, Fowlers' argues that the credit allowed by the Trial Court, while not specifically quantified, was obviously inadequate based on the proof presented. Century admittedly allowed a credit of a little over $12,000.00 for the mezzanine, which Fowlers' argues that Century's own witness stated was originally slated to cost between $20,000.00 and $30,000.00 to Century in the original bid. Century explained, however, that the amount of credit was reduced due to other work that was added, i.e. sprinkler system put in the added offices and radio station, etc. Century also admittedly

reduced its claim by another $9,000.00 in an effort to settle this issue and be paid. Thus, while Century originally sought payment of over $32,000.00 for the unpaid items under the contract, Century offered to settle for $23,250.00.

The Trial Court awarded Century $18,000.00 in payment of its claims, thereby reducing Century's lesser claimed damages by another $5,000.00. While approximately $2,000.00 of this reduction included items that the Trial Court simply excluded because Century did not obtain signed change orders, the Court did allow sufficient credit for the mezzanine, as the Court reduced Century's original damage claim by over $14,000.00 and, when added to the original $12,000.00 deduction, a total credit for the mezzanine of approximately $26,000.00 was allowed. This is in accordance with what Fowlers' claims it was due, and the evidence supports the amount. The Trial Court's judgment awarding plaintiff damages of $18,000.00 is affirmed.

Fowlers' argues that the Trial Court erred in awarding attorney's fees to plaintiff, as there is no contractual or statutory provision providing for this. There is a contractual provision providing for these fees, as the change orders ratified by Fowlers' include the following language, "I will pay all costs of enforced collection incurred by CFP, including, without limitation, CFP's attorneys fees". Thus, the Trial Court properly awarded attorney fees under the contractual provision.

Having found plaintiff is entitled to damages from defendants, a lien to enforce such judgment is appropriate. This issue is moot.

Century argues that it should be given an award of fees for defending this appeal. While it is unclear whether Century is claiming that it is due a fee award pursuant to the contractual terms or whether Century is claiming this is a frivolous appeal, we hold an additional award of attorney's fees in this case is not warranted.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Fowlers' Holdings, LLLP.

_____
HERSCHEL PICKENS FRANKS, P.J.