IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 6, 2015 Session

## ARTHUR B. ROBERTS ET AL. v. ROBERT BAILEY ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Loudon County**
**No. 11419      Frank V. Williams III, Chancellor**

---

**No. E2013-01950-SC-R11-CV – Filed July 31, 2015**

---

The plaintiffs filed suit against the defendants to settle a boundary dispute. During the litigation, the defendants, who had for years enjoyed the continuous and exclusive possession of their lands, discovered that their ancestors, husband and wife, had acquired title during the "gap years" and, in consequence, had owned the lands as tenants in common rather than tenants by the entirety. The defendants, proceeding as third-party plaintiffs, filed a motion to quiet title against third-party defendants, also descendants of their ancestors, who each claimed an ownership interest in the disputed lands by inheritance. The trial court granted summary judgment in favor of the third-party defendants. The Court of Appeals affirmed. On remand, the defendants/third-party plaintiffs amended their complaint, seeking to establish title by prescription. The trial court again denied relief, and the Court of Appeals affirmed, holding that the third-party defendants' "undisputed ignorance" of their status as co-tenants in common with their relatives precluded a "presumptive ouster" and, therefore, prevented the defendants/third-party plaintiffs from taking title by prescription. Because the undisputed facts establish that each of the elements of title by prescription has been satisfied, the Court of Appeals is reversed and the original defendants are awarded title by prescription. This cause is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Case Remanded to the Trial Court**

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Matthew A. Grossman, Knoxville, Tennessee, for the appellants, Richard Neal Bailey and Lisa Bailey Dishner.

Thomas M. Hale and Adam G. Russell, Knoxville, Tennessee, for the appellees, Kimber Littleton, Mark Lee Littleton, and Dale Littleton.

## OPINION
### I. Facts and Procedural History

On October 2, 1918, N.B. Bailey and his wife, Pearl Bailey, acquired by general warranty deed approximately 100 acres of land, known as the James Farm, in Loudon County. The property was described in two tracts: "Tract I," consisting of approximately fifty-eight acres, and "Tract II," consisting of approximately forty-three acres. In 1948, N.B. Bailey died intestate, survived by his widow, Pearl Bailey, and their four children, Robert W. Bailey, Naomi Bailey Littleton, Thelma Bailey Patty, and Pauline Bailey Whitaker. On July 12, 1957, Pearl Bailey, believing that she had a 100% ownership interest in the James Farm, conveyed Tract I by general warranty deed to her son, Robert W. Bailey, and his wife, Fay Bailey; Pearl Bailey reserved for herself a life estate interest in the property. On November 3, 1959, Robert W. Bailey and Fay Bailey conveyed their respective interests in a 1/4-acre parcel of Tract I to Robert's sister, Thelma Bailey Patty, and her husband, Ned Patty; in order to terminate her life estate interest as to the 1/4-acre parcel, Pearl Bailey joined in this conveyance to the Pattys. Later, Pauline Bailey Whitaker, who was divorced, died intestate without any children. On February 4, 1977, Pearl Bailey conveyed all of her interest in Tract II, in equal shares, to her three living children: Robert W. Bailey, Naomi Bailey Littleton, and Thelma Bailey Patty.[1]

On September 3, 1983, Fay Bailey conveyed all of her interest in Tract I by quitclaim deed to her two children, Richard Neal Bailey and Lisa Bailey Dishner; her husband, Robert W. Bailey, did not join in this conveyance. Two months later, Pearl Bailey died, extinguishing her life estate interest. On September 22, 1990, Naomi Bailey Littleton conveyed all of her interest in the James Farm, which was specifically described as including only Tract II, by deed to Robert W. Bailey; this deed did not purport to convey any interest in Tract I. On October 8, 1990, Naomi Bailey Littleton died intestate survived by one of her two sons, Dale Littleton. She was also survived by her grandchildren, Mark Lee Littleton and Kimber Littleton, who are the children of Wayne Littleton, who had predeceased his mother, Naomi Bailey Littleton. On August 3, 1991, Robert W. Bailey executed a deed conveying all of his interest in the James Farm to his children, Richard Neal Bailey and Lisa Bailey Dishner; Robert W. Bailey reserved for himself a life estate interest in the property. On November 1, 2001, Thelma Bailey Patty, who had survived her husband Ned Patty, died testate. Thelma's will named her daughter, Charlotte Ann Patty Dutton, as her sole real-estate beneficiary.

---

[1] Although the stipulated facts indicate that this conveyance occurred on February 7, 1977, the warranty deed is actually dated February 4, 1977.

On March 27, 2009, Arthur B. Roberts and his wife, Tia Roberts, filed suit against Robert W. Bailey and his two children, Richard Neal Bailey and Lisa Bailey Dishner (hereinafter collectively referred to as the "Baileys") in an effort to establish a boundary line between the James Farm and the Robertses' property. The Robertses eventually settled all of their claims against the Baileys and are not a party to this appeal. As a result of the boundary litigation, however, the Baileys became aware for the first time that Pearl Bailey, as a tenant in common with her husband, N.B. Bailey, did not acquire a 100% ownership interest in the James Farm upon the death of her husband in 1948. Because N.B. and Pearl had acquired the James Farm in 1918, the conveyance took place in the "gap years," 1914 to 1919, during which time a deed to a husband and wife created a tenancy in common with no right of survivorship, rather than a tenancy by the entirety, which vests a surviving spouse with full ownership in the property upon the death of the other spouse. See generally Moore v. Cole, 289 S.W.2d 695 (Tenn. 1956); Gill v. McKinney, 205 S.W. 416 (Tenn. 1918). The Baileys filed a third-party complaint against the descendants of Naomi Bailey Littleton and Thelma Bailey Patty to quiet title as to Tract I, naming as third-party defendants Dale Littleton, Mark Lee Littleton, Kimber Littleton, and Charlotte Ann Patty Dutton (hereinafter collectively referred to as the "Littletons").[2] Robert W. Bailey died on February 1, 2013, thereby terminating his life estate interest. There is no dispute as to the ownership of Tract II.

In their third-party complaint, the Baileys initially claimed full ownership of Tract I on the theory that the actual intention of the 1918 deed was to create a tenancy by the entirety between N.B. Bailey and Pearl Bailey, and that, in consequence, Robert W. Bailey and Fay Bailey had received all rights, title, and interest in the property by virtue of the 1957 conveyance of Tract I from Pearl Bailey. In recognition of the confusion created by the gap years, the Baileys asked the trial court to reform the 1918 deed so as to confirm the right of survivorship in Pearl Bailey, meaning that upon N.B.'s death, Pearl would have retained a 100% ownership interest.

In response to the third-party complaint by the Baileys, the Littletons claimed their respective ownership interests in Tract I on the basis that the 1918 deed had created a tenancy in common between N.B. Bailey and Pearl Bailey, meaning that upon N.B.'s death without a will, Pearl would have retained only a fifty-percent interest, while N.B.'s fifty-percent interest would have passed first to his children in equal shares and eventually to his grandchildren and great-grandchildren. The Littletons also asserted

---

[2] Charlotte Ann Patty Dutton is not participating in this appeal.

interests in the 1/4-acre parcel that had been carved out of Tract I in 1959 by the conveyance from Robert W. Bailey and Fay Bailey to Thelma Bailey Patty and Ned Patty.

Based upon the facts set forth in their third-party complaint, the Baileys filed a motion for partial summary judgment. On March 30, 2010, the trial court denied relief, holding that because of the law in effect during the gap years, the James Farm had been owned by N.B. Bailey and Pearl Bailey as tenants in common. After the entry of the order, the Baileys appealed. In Roberts v. Bailey, 338 S.W.3d 540, 543 (Tenn. Ct. App. 2010), the Court of Appeals affirmed, holding that because "the 1918 deed . . . to N.B. Bailey and his wife, Pearl Bailey, was given during the 'hiatus in the estate of tenancy by the entireties[,]' . . . N.B. Bailey and Pearl Bailey did not take title as tenants by the entireties." This Court denied the Baileys permission to appeal on March 9, 2011. On remand to the trial court,[3] the Baileys amended their third-party complaint, asserting absolute fee simple title by prescription on the basis that they had utilized Tract I exclusively and without interruption from the Littletons since 1957.[4] The Baileys also asserted the doctrine of estoppel by deed based upon representations made in the 1990 quitclaim deed by which Naomi Bailey Littleton conveyed her interest in the James Farm to Robert W. Bailey.[5]

The trial court again granted summary judgment to the Littletons, holding that the Baileys had failed to establish title by prescription because the Littletons had no knowledge of their interests in the property prior to the initiation of the boundary-line dispute, which qualified as a "disability" that prevented the Littletons from pursuing their rights. The court also held that the doctrine of estoppel by deed was "not applicable to

---

[3] After denying the Baileys' partial motion for summary judgment, the trial court had certified its judgment as final. See Tenn. R. Civ. P. 54.02. The Court of Appeals, recognizing that this may have been an improper procedure, allowed the appeal to proceed on an interlocutory basis. Roberts, 338 S.W.3d at 541 n.1. Upon affirming the trial court, the Court of Appeals remanded for the collection of costs and further proceedings. Id. at 544.

[4] The third-party complaint asserted that Robert W. Bailey had continuously and exclusively possessed the land since 1957, while Richard Neal Bailey and Lisa Bailey Dishner had continuously and exclusively possessed the land since 1983.

[5] Specifically, this deed acknowledged Pearl Bailey as "the owner of the entire interest in this property as the surviving tenant by the entirety" and identified only Tract II as the remaining property owned by Pearl Bailey, Tract I having been previously "conveyed off [in] various parcels of land." In consequence, the Baileys argued that the Littletons, as successors in title to Naomi Bailey Littleton, could neither deny the "material fact" that Pearl Bailey was the sole owner with 100% interest in the James Farm, nor claim any interest in Tract I.

- 4 -

the undisputed facts of this case." As a result, the trial court vested title to Tract I and the 1/4-acre parcel carved out by the 1959 deed as follows:

> Tract I (fifty-eight acres less the 1/4-acre parcel):
> (1) 33.33% undivided interest in Richard Neal Bailey
> (2) 33.33% undivided interest in Lisa Bailey Dishner
> (3) 16.67% undivided interest in Charlotte Ann Patty Dutton
> (4) 8.335% undivided interest in Dale Littleton
> (5) 4.1675% undivided interest in Kimber Littleton
> (6) 4.1675% undivided interest in Mark Lee Littleton
>
> 1/4-acre parcel conveyed in 1959 from Robert W. Bailey and Fay Bailey to Thelma Bailey Patty and Ned Patty:
> (1) 79.165% undivided interest in Charlotte Ann Patty Dutton
> (2) 2.0825% undivided interest in Richard Neal Bailey
> (3) 2.0825% undivided interest in Lisa Bailey Dishner
> (4) 8.335% undivided interest in Dale Littleton
> (5) 4.167% undivided interest in Kimber Littleton
> (6) 4.167% undivided interest in Mark Lee Littleton

Notwithstanding its ruling in favor of the Littletons, however, the trial court commented that "the folks that should be prevailing here are the Baileys except for some of these convoluted multi-tiered rules of law . . . . If I had my way today, which I don't, then they would be walking out as having prevailed."

Once again the Baileys appealed. The Court of Appeals again affirmed the trial court, concluding that although the Littletons' lack of knowledge of their interests in the property did not constitute an "actual disability" for purposes of title by prescription, the Baileys had failed to establish "presumptive ouster" of the Littletons. Roberts v. Bailey, No. E2013-01950-COA-R3-CV, 2014 WL 3778298, at *6, *11 (Tenn. Ct. App. July 31, 2014). The Court of Appeals further held that the Baileys could not rely upon the doctrine of estoppel by deed. Id. at *12. This Court granted the Baileys' application for permission to appeal in order to address the question of title by prescription.

## II. Standard of Review

Because the grant or denial of a motion for summary judgment is purely a matter of law, our standard of review is de novo with no presumption of correctness. Kinsler v. Berkline, LLC, 320 S.W.3d 796, 799 (Tenn. 2010). In consequence, "our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met." Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). Summary judgment is appropriate only if there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because there are no material facts in dispute between the Baileys and the Littletons, who each filed properly supported cross-motions for summary judgment, the core issue is whether the undisputed facts establish, as a matter of law, that title by prescription lies with the Baileys.

### III. Background

At common law, a conveyance of real property to a husband and wife created a tenancy by the entirety with a right of ownership to the survivor between them based upon the legal unity of person—that is, the law considered the husband and the wife as one. Bernie D. Jones, Revisiting the Married Women's Property Acts: Recapturing Protection in the Face of Equality, 22 Am. U. J. Gender Soc. Pol'y & L. 91, 98 (2013). Nevertheless, the husband had the exclusive marital right to possession of the property and to the rents and profits; he could encumber the property; and the entire estate was subject to execution for his debts, save only the wife's right of survivorship. Note, Effect of the Married Women's Property Acts Upon Estates by the Entirety, 37 Harv. L. Rev. 616, 616 (1924). In the mid to late 1800s, state legislatures began passing Married Women's Property Acts, which were designed to "eliminate the detriments of coverture" by recognizing, among other things, "the right[] of a married woman to . . . manage and control her own property." Amy D. Ronner, Husband and Wife Are One—Him: Bennis v. Michigan as the Resurrection of Coverture, 4 Mich. J. Gender & L. 129, 134 (1996). In Tennessee, our version of the Married Women's Property Act was passed in 1913 in the form of the Bejach Law, so named for the sponsor of the bill. See Act of Feb. 20, 1913, ch. 26, 1913 Tenn. Pub. Acts 59, 59-60 (codified as amended at Tenn. Code Ann. § 36-3-504(a) (2014)). The Bejach Law, which went into effect on January 1, 1914, "fully emancipated [married women] from all disability on account of coverture" and "totally abrogated" the common law insofar as it affected "the rights of property of the wife." Id.

Courts interpreted the effect of the Married Women's Property Acts in three different ways. Some jurisdictions construed the legislation to have no effect on tenancies by the entirety. See, e.g., Pray v. Stebbins, 4 N.E. 824 (Mass. 1886); Morrill v. Morrill, 101 N.W. 209 (Mich. 1904); Speier v. Opfer, 40 N.W. 909 (Mich. 1888). As a second option, a majority of states held that tenancies by the entirety remained intact, but that the Married Women's Property Acts terminated the husband's marital right to exclusive possession and enjoyment and freed the wife's property from liability to the husband's creditors. See, e.g., Hurd v. Hughes, 109 A. 418 (Del. Ch. 1920); Ohio Butterine Co. v. Hargrave, 84 So. 376 (Fla. 1920); Brewing Co. v. Saxy, 201 S.W. 67 (Mo. 1918). A third interpretation was that the Married Women's Property Acts converted a tenancy by the entirety into a tenancy in common with no right of survivorship. See, e.g., Branch v. Polk, 33 S.W. 424 (Ark. 1895); Buttlar v. Rosenblath, 9 A. 695 (N.J. 1887); Hiles v. Fisher, 39 N.E. 337 (N.Y. 1895).

In its ruling in Gill v. McKinney in 1918, this Court adopted the third approach, holding that the Bejach Law completely abolished the estate of a tenancy by the entirety. 205 S.W. at 417-18. As a result, the Court held that a conveyance of real property to husband and wife which occurred after the passage of the Bejach Law could only create a tenancy in common. Id. at 419. Less than a year after Gill was decided, however, our General Assembly reinstated tenancies by the entirety. See Act of Apr. 15, 1919, ch. 126, § 2, 1919 Tenn. Pub. Acts 406, 407 (codified as amended at Tenn. Code Ann. § 36-3-505 (2014)). Thus, from the period between January 1, 1914, and April 15, 1919, a conveyance of real property to a husband and wife created a tenancy in common, with no right of survivorship; at all other times under the common law, however, such a conveyance created a tenancy by the entirety with a right of ownership in the surviving spouse. See Moore, 289 S.W.2d at 696 ("Of course between the period of January 1, 1914 and April 15, 1919, the property acquired by a husband and wife upon the death of either descended to the heirs of the one who died. During that period the doctrine of tenancy by the entireties was not in force in this State . . . ."). This Court has repeatedly confirmed that a conveyance of real property to a husband and wife during the "gap years" or "hiatus period," terms used interchangeably, created a tenancy in common, with each spouse receiving an undivided one-half interest that would pass to his or her heirs upon death. See, e.g., Hankins v. Mathews, 425 S.W.2d 608, 609 (Tenn. 1968); Hicks v. Sprankle, 257 S.W. 1044, 1045 (Tenn. 1924); Kellar v. Kellar, 221 S.W. 189, 189 (Tenn. 1920); accord Tenn. Code Ann. § 36-3-505 compiler's notes (2014) ("[T]here is a hiatus in the estate of tenancy by the entireties, which extends from January 1, 1914, to April 16, 1919, and affects deeds executed in that period.").

## IV. Title by Prescription

Because the 1918 conveyance to N.B. and Pearl Bailey, as husband and wife, occurred during the gap years, the contested ownership interest in Tract I passed to the Baileys and the Littletons as co-tenants of the property, each having "the equal right to use, possess, and enjoy the entire property." See Heather K. Way, Informal Homeownership in the United States and the Law, 29 St. Louis U. Pub. L. Rev. 113, 151 (2009) (explaining the rights and interests of co-tenant heirs whose ancestors owned property as tenants in common). The Baileys, however, contend that they should be awarded absolute fee simple title to Tract I by virtue of their sole and exclusive possession of the property for a period of at least twenty years. See id. at 180 (recognizing Tennessee as among the states that have "affirm[ed] the right of a co-tenant to obtain fee simple title through the sole and exclusive possession of property or through additional actions such as paying taxes and making property improvements"); see also Morgan v. Dillard, 456 S.W.2d 359, 364 (Tenn. Ct. App. 1970) (awarding a co-tenant "title by prescription based upon twenty years exclusive and uninterrupted possession").

In this state, the doctrine of title by prescription as between co-tenants can be traced back 155 years to the case of Marr's Heirs v. Gilliam, 41 Tenn. 488 (1860), when this Court made the following observation:

> It is . . . well settled that the exclusive and uninterrupted possession by one tenant in common of land for a great number of years—say for twenty or more—claiming the same as his own, without any account with his co-tenants, or claim on their part[]—they being under no disability to assert their rights[]—becomes evidence of a title to such sole possession, and the [fact finder is] authorized to presume a release, an ouster, or other thing necessary to protect the possessor . . . .

Id. at 501. While our courts have articulated slight differences in the doctrine over the years, the Court of Appeals has recently stated the elements of title by prescription as follows:

> (a) The prescriptive holder must have been in exclusive and uninterrupted possession of the land for a period of twenty years or more, claiming the land as his own without any accounting to his cotenants[;]
>
> (b) The prescriptive holder's cotenants must have been under no disability to assert their rights during the prescriptive period of twenty years[; and]
>
> (c) The prescriptive holder's occupancy must have been without the permission, actual or implied, of the other cotenants.

England v. England, No. E2011-02094-COA-R3-CV, 2012 WL 4503434, at *5-6 (Tenn. Ct. App. Oct. 2, 2012) (citing Livesay v. Keaton, 611 S.W.2d 581, 583-84 (Tenn. Ct. App. 1980)). In this instance, the Court of Appeals described how the elements of the doctrine may be proven as between a possessing co-tenant (like the Baileys) and a non-possessing co-tenant (like the Littletons), explaining as follows:

> The common law doctrine of title by prescription applies when a presumption of title arises by an exclusive and uninterrupted possession of the land by one tenant in common for twenty or more years, claiming the same as his own, without any recognition of his cotenants or claim upon their part. A non[-]possessing co-tenant may rebut a possessing co-tenant's evidence of title by possession either by demonstrating that (1) the possession was by the permission or indulgence of the other co-tenants or (2) one or more of the co-tenants were under a disability, such as the disability of minority[,] during the requisite twenty[-]year period.

<u>Roberts</u>, 2014 WL 3778298, at *5 (citations and internal quotation marks omitted); <u>see also</u> <u>Morgan</u>, 456 S.W.2d at 363-64 (holding that the presumption of title arising from exclusive and continuous possession for twenty years or more "'may be rebutted by the infancy or other disability of the parties, their actual relationship, or other facts showing the possession was . . . by the indulgence, permission, or as tenant of the owner'" (quoting <u>Drewery v. Nelms</u>, 177 S.W. 946, 948 (Tenn. 1915))). In <u>Morgan</u>, the Court of Appeals reiterated the nature of title by prescription as based in the "principle of public policy[] to quiet the title of those who can show no other title than long-continued possession and use." <u>Id.</u> (quoting <u>Cannon v. Phillips</u>, 34 Tenn. 211, 214 (1854)).[6]

## V. Application

The first element of title by prescription is twenty or more years of exclusive and uninterrupted possession by a co-tenant without any accounting to the other co-tenants. As the Court of Appeals recognized, "[i]t is undisputed that the Baileys maintained exclusive and uninterrupted possession of [Tract I], including paying property taxes, from at least the time of Pearl Bailey's death in 1983 through the initiation of this action in 2009." <u>Roberts</u>, 2014 WL 3778298, at *6. In fact, because "[i]t is also undisputed that Robert and Fay Bailey's possession of [Tract I] may be tacked onto the subsequent possession by their children," the Baileys have been in exclusive and uninterrupted possession of the lands since 1957. <u>Id.</u> The record reflects that during the fifty-two years between the 1957 conveyance by Pearl Bailey to Robert W. Bailey and Fay Bailey, and the filing of the boundary-dispute litigation in 2009, the Baileys enjoyed complete and uninterrupted use of Tract I as a farm to the exclusion of all others. In consequence, the first element of title by prescription has clearly been established in favor of the Baileys.

The second question in the analysis is whether the Littletons, as co-tenants with the Baileys, were under any disability during the twenty-year prescriptive period that would have prevented them from asserting their rights to the property. The Littletons claim that they have "rebutted the [Baileys'] presumption [of title] by establishing that ignorance of their ownership interests operated as a disability preventing them from pursuing those interests." <u>Id.</u> The trial court agreed with the Littletons that ignorance of their interests in Tract I was sufficient to rebut the presumption of title that arose in favor of the Baileys by virtue of their exclusive possession for more than twenty years. <u>Id.</u> at *5. The Court of Appeals, however, agreed with the Baileys "that the concept of

---

[6] The doctrine of title by prescription is similar to, but distinct from, the doctrine of adverse possession. <u>See</u> <u>Cumulus Broad., Inc. v. Shim</u>, 226 S.W.3d 366, 375-78 (Tenn. 2007) (discussing adverse possession); <u>Amos v. Taylor</u>, No. M2006-02170-COA-R3-CV, 2008 WL 1891443, at *7 (Tenn. Ct. App. Apr. 28, 2008) (discussing differences between title by prescription and adverse possession).

disability in this context applies to a party that was not . . . of full age and capacity to sue or acquiesce in the prescription of title" during the twenty-year period, and, therefore, "lack of knowledge of co-tenancy does not . . . constitute a 'disability' under the doctrine of title by prescription." Id. at *6.

We agree with the Court of Appeals that "disability," in the context of title by prescription, is either a disability by minority or by incapacity—that is, because of age or mental capacity, a non-possessing co-tenant is unable to file suit to assert his or her rights. See, e.g., Tenn. Dep't of Transp. v. Patrick, No. W2001-00397-COA-R3-CV, 2001 WL 1683751, at *3 (Tenn. Ct. App. Dec. 27, 2001) (declining to find a disability where "[t]he interrogatories provided the birth dates of all [the] heirs and a statement indicating that none of the heirs were mentally incompetent"); Scruggs v. Baugh, 3 Tenn. App. 256, 263 (1926) ("[I]t will be presumed in the absence of evidence that persons against whom the prescription is claimed were capable of suing or acquiescing in the prescription, and the fact that they were not sui juris or capable of granting a right must be pleaded and proved."); see also Black's Law Dictionary 528 (9th ed. 2009) (defining disability as "[i]ncapacity in the eyes of the law" and noting that "most of a minor's disabilities are removed when he or she turns [eighteen]"); id. at 828 (defining incapacity as the "[l]ack of physical or mental capabilities" or the "[l]ack of ability to have certain legal consequences attach to one's actions," as in a minor's incapacity to make a binding contract); id. at 1572 (defining sui juris as being "[o]f full age and capacity"). Neither the Baileys nor the Littletons had any knowledge of the co-tenancy. To extend disability to include ignorance of law or fact would serve to benefit the Littletons and yet, at the same time, deprive the Baileys, equally unknowing, of full ownership and a farm that they have occupied since 1957.[7] Such a holding would be contrary to the long-held public policy of this state to quiet the title of real property. In summary, the Littletons have not established a disability in the form of minority or mental incapacity in order to rebut the presumption of title in the Baileys.

As to the third element of title by prescription, we must determine whether the Baileys' possession of Tract I was without the permission, either actual or implied, of the Littletons. See Brown v. Daly, 968 S.W.2d 814, 818 (Tenn. Ct. App. 1997) (recognizing that a claim of title by prescription "necessarily entails proof that [a co-tenant's] possession of the land was without the other co-tenants' permission"). In Tennessee Department of Transportation v. Patrick, our Court of Appeals explained this element of the doctrine as follows:

---

[7] Knowledge of the law is presumed. Upton v. Tribilcock, 91 U.S. 45, 50 (1875). Moreover, there is constructive notice of the status of property by virtue of recordation in the register's office in the county in which the property lies. Blevins v. Johnson Cnty., 746 S.W.2d 678, 682-83 (Tenn. 1988).

The presumption created under the doctrine of prescription . . . may be rebutted by a showing that either actual or implied permission to possess the property was given to the prescriptive holder by the other co-tenants. Such permission, either actual or implied, would negate the requirement that the prescriptive holder's possession was actually in opposition to his fellow co-tenants' rights in the property. Accordingly, although actual "ouster" does not have to be proven, a showing that permission was given causes the presumption in favor of the prescriptive holder to fall.

2001 WL 1683751, at *3 (emphasis added) (citation omitted). This statement of the law touches upon the primary difference between the doctrine of title by prescription and the doctrine of adverse possession—that is, adverse possession requires proof of an "actual ouster" of co-tenants, whereas title by prescription does not. Morgan, 456 S.W.2d at 362-63; see also England, 2012 WL 4503434, at *6 (listing elements of title by prescription without requiring evidence of ouster); Livesay, 611 S.W.2d at 583-84 (same); Patrick, 2001 WL 1683751, at *3 ("We feel compelled to note at the outset, that actual 'ouster' is not one of the requirements that need be proven by the prescriptive holder as [is the case] with the doctrine of adverse possession.").

In this instance, after determining that the Littletons could not establish a disability by virtue of the ignorance of their interests in Tract I, the Court of Appeals nevertheless "conclude[d] that the Baileys were unable to present sufficient evidence of a presumptive ouster of their cotenants." Roberts, 2014 WL 3778298, at *11. In reaching this conclusion, the Court of Appeals rejected "the proposition that a presumptive ouster simply may be assumed under the doctrine of title by prescription." Id. In our view, however, such a presumption is precisely what the doctrine of title by prescription was intended to provide in favor of the possessing co-tenant, subject only to possible rebuttal of the presumption by evidence of disability or permission on the part of the non-possessing co-tenant. Indeed, in one of the first leading cases on the doctrine of title by prescription, this Court held that in the absence of a disability on the part of co-tenants, "the exclusive and uninterrupted possession [of land] by one tenant in common" for twenty or more years, without any accounting to the other co-tenants, "becomes evidence of a title to such sole possession, and the [fact finder is] authorized to presume a release, an ouster, or other thing necessary to protect the possessor." Marr's Heirs, 41 Tenn. at 501 (emphasis added). As noted by the Court of Appeals, the Littletons have made "no claim of rebutting the presumption through having granted permission for or openly indulging the Baileys' possession of [Tract I]." Roberts, 2014 WL 3778298, at *6. In

consequence, the Littletons have failed to rebut the presumption of title in favor of the Baileys.[8]

## VI. Conclusion

Because the Baileys have enjoyed exclusive and uninterrupted possession for more than twenty years, claiming the land as their own and without any accounting to the Littletons, and because the Littletons were not under any disability for those years and have not offered any evidence that the Baileys' occupancy was by virtue of their permission, express or implied, the Baileys have acquired title by prescription to Tract I, less the 1/4-acre parcel conveyed to the Pattys in 1959. The Court of Appeals is, therefore, reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to Kimber Littleton, Mark Lee Littleton, and Dale Littleton, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

---

[8] In light of our conclusion that each of the elements of title by prescription has been established, we need not address the Baileys' alternative argument based upon the doctrine of estoppel by deed.