
# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 14, 2016 Session

## KATHALEEN MORIARTY KING v. HAL DAVID KING

**Appeal from the Chancery Court for Knox County**
**No. 126512-2      Clarence E. Pridemore, Jr., Chancellor**

---

## No. E2016-01451-COA-R3-CV

---

This appeal involves a 1997 divorce judgment that awarded the wife a percentage of the husband's federal retirement annuity. The parties entered into a settlement agreement, later incorporated into a judgment, which provided that the wife would receive one-half of the marital portion of the husband's retirement. The 1997 judgment contained no provisions regarding salary adjustments or cost-of-living adjustments applicable to the retirement annuity. In 2008, the husband's attorney filed and the trial court entered a "Court Order Acceptable for Processing," which provided for the wife's fractional share of the husband's retirement annuity but made no mention of salary adjustments applicable thereto. This order did provide, however, that the wife would be entitled to cost-of-living adjustments. Following his retirement in 2015, the husband filed a motion in 2016 seeking relief from the trial court's prior final orders pursuant to Tennessee Rule of Civil Procedure 60. The trial court granted the motion, determining that the relief sought merely "clarified" but did not modify the earlier orders. The wife has appealed. We conclude that the trial court impermissibly granted relief to the husband pursuant to Rule 60.01, which had the effect of modifying the parties' settlement agreement and the court's prior orders. We therefore vacate the trial court's order granting Rule 60 relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark R. Orr, Knoxville, Tennessee, for the appellant, Kathaleen Moriarty King.

John A. Lucas, Knoxville, Tennessee, for the appellee, Hal David King.

**OPINION**

**I. Factual and Procedural Background**

This appeal involves issues regarding the interpretation and enforcement of a divorce judgment entered in 1997. Kathaleen Moriarty King ("Wife") and Hal David King ("Husband") were divorced in Knox County Chancery Court on October 17, 1997, after approximately seventeen years of marriage. Both prior to and during the marriage, Husband was a federal employee with the Department of Housing and Urban Development. Husband had maintained his federal employment for 252 months at the time of the divorce, with 216 months of Husband's federal employment occurring during the marriage.

At the time of the divorce, the parties reached a settlement agreement that was announced in open court and later incorporated into their final judgment of divorce. As part of that agreement, the final judgment provided in pertinent part:

> [Wife] shall be entitled to participate in [Husband's] retirement program with Civil Service Retirement System which he is entitled to as a federal employee. [Wife] shall be awarded one-half (1/2) of 18/21st of the amount he has accrued as of the 4th day of August 1997. This amount would be available to her at any time the Civil Service Retirement System allows or at his retirement and there shall be a separate Court Order affecting retirement benefits which shall be prepared and submitted to the Court in the immediate future.

The final judgment did not contain any other provisions regarding Husband's federal retirement annuity and did not specifically address salary or cost-of-living adjustments applicable to same.

In 2008, Husband's attorney filed a "Court Order Acceptable for Processing," which the trial court entered on August 26, 2008. This order provided that it was "for the specific purpose of entering an order dividing the Defendant's Civil Service Retirement System retirement interests in a manner consistent with the Final Judgment for Divorce and the Office of Personnel Management regulations." In relevant portion, the 2008 order states:

> 1. The court has considered the requirements and standard terminology provided in part 838 of Title 5, Code of Federal Regulations.[1] The

---

[1] 5 C.F.R. § 838.622 will be fully discussed in a later section of this opinion.

terminology used in the provisions of this order that concern benefits under the Civil Service Retirement System Retirement are governed by the standard conventions established in that part.

* * *

4.     Employee is eligible for retirement benefits under the Civil Service Retirement System based on employment with the United States Government.  Former Spouse is entitled to a share of Employee's gross monthly annuity under the Civil Service Retirement System to be computed as follows:  Former Spouse shall be awarded one-half (1/2) of eighteen/twentifirsts (18/21) of the amount Employee had accrued as of the 4th day of August 1997.  When COLA's are applied to Employee's retirement benefits, the same COLA applies to Former Spouse's share.  The United States Office of Personnel Management is directed to pay Former Spouse's share directly to Former Spouse.

* * *

8.     Commencement Date and Form of Payment to Former Spouse:  Former Spouse shall be entitled to receive monthly benefits under CSRS as of the earliest date on which the Employee commences benefits under CSRS.

9.     Continued Qualified Status of Order:  It is the intention of the parties that this Order continue to qualify as an Order under 5 CFR Pt. 838, as it may be amended from time to time.

Husband retired from his employment in July 2015.  On June 10, 2016, Husband filed a motion pursuant to Tennessee Rules of Civil Procedure 60.01 and 60.02(5), asking the trial court to amend the 1997 divorce judgment by adding verbiage that would exclude the application of any post-1997 cost-of-living or salary adjustments to Wife's share of his federal retirement annuity.  Husband asserted in the motion that upon his retirement, he initially received documentation from the federal Office of Personnel Management ("OPM"), which stated that he would receive monthly benefits of $3,402 and Wife would receive monthly benefits of $1,042.  According to Husband's motion, Husband received a subsequent notice in May 2016, stating that the benefits had been recalculated such that Wife's monthly benefit would increase to $2,355 and Husband's monthly benefit would be decreased to $2,052.  As Husband asserts in his concomitantly filed memorandum of law, the recalculation was caused by the lack of specific language in the final decree that instructed OPM not to include cost-of-living or salary adjustments

3

following the date of the divorce decree.  *See* 5 C.F.R. § 838.622.

Wife filed a response to Husband's motion, wherein she asserted that the respective language of the 1997 decree and 2008 order was clear and unambiguous.  Wife also argued that "the language being proposed by [Husband] was not included in the Final Judgment because it was not the intent or understanding of the parties or the Court at that time."  Wife thus opposed Husband's request for relief.

Husband subsequently filed a supplemental memorandum wherein he acknowledged that the 2008 order explicitly provided that Wife would receive cost-of-living adjustments on her share of Husband's federal retirement annuity.  Husband therefore modified the relief sought in his motion by stating that Wife should receive post-retirement cost-of-living adjustments but not salary adjustments occurring after August 4, 1997.

The trial court held a hearing on July 7, 2016, during which the court considered oral argument regarding this issue.  The court announced its ruling from the bench, granting Husband's motion for relief pursuant to Tennessee Rule of Civil Procedure 60.01 and finding that such relief was consistent with the terms of the earlier orders.  The court entered a written order the same day, modifying both the final judgment and the 2008 order to provide that salary adjustments occurring after August 4, 1997, would not be applied to Wife's share of Husband's retirement benefits.  The July 7, 2016 order also provided that cost-of-living adjustments occurring between August 4, 1997, and the date of Husband's retirement would not be applied to Wife's share.  The court ordered that Wife would still receive, however, any cost-of-living adjustments occurring after Husband's retirement date.

Wife made an offer of proof during the July 7, 2016 hearing, after the chancellor had ruled and left the bench.  Wife testified that at the time of the parties' divorce settlement, she and Husband and their respective counsel had no discussion regarding the exclusion of salary or cost-of-living adjustments occurring subsequent to the date of the divorce judgment.  Wife timely appealed.

## II.  Issues Presented

Wife presents the following issues for our review, which we have restated slightly:

1.   Whether the trial court erred by granting Husband's Rule 60.01 motion, thereby modifying the 1997 divorce judgment and 2008 order to provide that Wife would not receive any salary or cost-of-living adjustments occurring after the date of the 1997 judgment.

4

2.      Whether the trial court erred by granting Husband's Rule 60.01 motion without the presentation of any evidence.

## III. Standard of Review

A trial court's decision to grant a Tennessee Rule of Civil Procedure 60.01 motion to correct a clerical error in a judgment is reviewed under an abuse of discretion standard. *See Jackman v. Jackman,* 373 S.W.3d 535, 541 (Tenn. Ct. App. 2011). Under the abuse of discretion standard, a trial court's ruling "'will be upheld so long as reasonable minds can disagree as to the propriety of the decision made.'" *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000)). A trial court abuses its discretion only when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning or that cause[s] an injustice to the party complaining.'" *See Eldridge*, 42 S.W.3d at 85 (quoting *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999)). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *See Eldridge*, 42 S.W.3d at 85.

## IV. Terms of Prior Orders and Propriety of Rule 60.01 Relief

The trial court granted relief to Husband pursuant to Tennessee Rule of Civil Procedure 60.01, which states in pertinent part:

> Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders.

The chancellor noted in his ruling from the bench that Husband's proposed order granting Rule 60.01 relief was merely clarifying the court's prior orders, was consistent with the prior orders, and was "not changing anything." Wife asserts that the trial court abused its discretion in granting relief pursuant to Rule 60.01 because such relief had the effect of modifying the parties' property settlement agreement by divesting her of her interest in the cost-of-living and salary adjustments applicable to her share of Husband's retirement benefits as awarded by the parties' divorce decree.

This Court has explained that "once a property settlement agreement is adopted by the court as part of the divorce decree, the settlement is not subject to modification." *See Joyner v. Pers. Fin. Corp.*, No. W2005-02202-COA-R3-CV, 2006 WL 1521204, at *2 (Tenn. Ct. App. June 5, 2006) (citing *Towner v. Towner,* 858 S.W.2d 888, 893 (Tenn.

5

1993)).  This Court further elucidated:

> "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'" *Bruce v. Bruce,* 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990) (quoting *Matthews v. Matthews,* 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)).  The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union,* 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995); *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992).  In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.,* 707 S.W.2d 514, 516 (Tenn. Ct. App. 1985).  In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer-Jordan & Assoc. v. Jordan,* 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

*Id.*  *See also Johnson v. Johnson*, 37 S.W.3d 892, 895 (Tenn. 2001) (holding that a divorce decree's apportionment of marital property is not subject to modification).

Although Husband acknowledges that the division of property contained in the divorce judgment is not modifiable, he argues that it is Wife who is trying to "modify" the judgment because the parties' intent was to divide only the retirement benefits that had accrued as of August 4, 1997.  Husband states that due to the inclusion of this date in the decree, the only reasonable conclusion would be that post-1997 cost-of-living and salary adjustments should not be applied to Wife's share.  Therefore, according to Husband, he merely sought to enforce the parties' agreement by having the decree corrected pursuant to Rule 60.01.

Wife argues that the provisions of 5 C.F.R. § 838.622 control in this situation and that because the divorce decree did not specify otherwise, she is entitled to cost-of-living and salary adjustments occurring prior to Husband's retirement.  5 C.F.R. § 838.622 (2008) provides in pertinent part:

> (b)(1) Unless the court order directly and unequivocally orders otherwise, a court order that awards a former spouse a portion of an employee annuity either on a percentage basis or by use of a fraction or formula provides that the former spouse's share of the employee annuity will be adjusted to maintain the same percentage or fraction whenever the employee annuity

changes as a result of—

(i) Salary adjustments occurring after the date of the decree and before the employee retires; and

(ii) Cost-of-living adjustments occurring after the date of the decree and after the date of the employee's retirement.

(2) A court order that awards a former spouse a specific dollar amount from the employee annuity prevents the former spouse from benefiting from salary and cost-of-living adjustments after the date of the decree, unless the court expressly orders their inclusion.

(c)(1)(i) Except as provided in paragraph (b) of this section, a court order that contains a general instruction to calculate the former spouse's share effective at the time of divorce or separation entitles the former spouse to the benefit of salary adjustments occurring after the specified date to the same extent as the employee.

(ii) To prevent the application of salary adjustments after the date of the divorce or separation, the court order must either state the exact dollar amount of the award to the former spouse or specifically instruct OPM not to apply salary adjustments after the specified date in computing the former spouse's share of the employee annuity.

(2)(i) Except as provided in paragraph (b) of this section, a court order that requires OPM to compute a benefit as of a specified date before the employee's retirement, and specifically instructs OPM not to apply salary adjustments after the specified date in computing the former spouse's share of an employee annuity provides that the former spouse is entitled to the application of cost-of-living adjustments after the date of the employee's retirement in the manner described in § 838.241.

(ii) To award cost-of-living adjustments between a specified date and the employee's retirement, the court order must specifically instruct OPM to adjust the former spouse's share of the employee annuity by any cost-of-living adjustments occurring between the specified date and the date of the employee's retirement.

(iii) To prevent the application of cost-of-living adjustments that occur after the employee annuity begins to accrue to the former spouse's share of the

employee annuity, the decree must either state the exact dollar amount of the award to the former spouse or specifically instruct OPM not to apply cost-of-living adjustments occurring after the date of the employee's retirement.

Pursuant to the above directives, Wife would be entitled to have her share of Husband's federal retirement annuity adjusted for salary adjustments and cost-of-living adjustments because (1) her share was awarded as a percentage/fractional portion rather than a specific dollar amount and (2) neither the 1997 judgment nor the 2008 order specifically directed otherwise. *See* 5 C.F.R. § 838.622(b).

Husband asserts that the regulatory provisions detailed above "purport[] to override" the plain language of the 1997 judgment and the 2008 order and that, "as a matter of law and of federal-state court comity, a federal agency cannot refuse to follow a state court order, absent some overriding principle such as federal preemption, unconstitutionality, or the like." A further examination of the pronouncements contained within the applicable federal regulations illustrates the fallacy of Husband's argument.

5 C.F.R. § 838.101 (2008), entitled "Purpose and scope," clarifies as follows:

(a)(1) This part regulates the Office of Personnel Management's handling of court orders affecting the Civil Service Retirement System (CSRS) or the Federal Employees Retirement System (FERS), both of which are administered by the Office of Personnel Management (OPM). Generally, OPM must comply with court orders, decrees, or court-approved property settlement agreements in connection with divorces, annulments of marriage, or legal separations of employees, Members, or retirees that award a portion of the former employee's or Member's retirement benefits or a survivor annuity to a former spouse.

(2) In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.

(b) This part prescribes—

(1) The requirements that a court order must meet to be acceptable for processing under this part;

(2) The procedures that a former spouse or child abuse creditor must follow when applying for benefits based on a court order under sections 8341(h), 8345(j), 8445 or 8467 of title 5, United States Code;

(3) The procedures that OPM will follow in honoring court orders and in making payments to the former spouse or child abuse creditor; and

(4) <u>The effect of certain words and phrases commonly used in court orders affecting retirement benefits</u>.

(Emphasis added.)

In addition, 5 C.F.R. § 838.122 (2008) explains that state courts are responsible for "[i]ssuing clear, specific, and express instructions consistent with the statutory provisions authorizing OPM to provide benefits to former spouses or child abuse creditors and the requirements of this part for awarding such benefits." State courts are also responsible for "[u]sing the terminology defined in this part only when it intends to use the meaning given to that terminology by this part." *See* 5 C.F.R. § 838.122(c). Furthermore, 5 C.F.R. § 838.201 (2008) explains: "Subpart F of this part [which contains § 838.622] contains definitions that OPM uses to determine the effect on employee annuity of a court order acceptable for processing."

Subpart F begins with 5 C.F.R. § 838.601 (2008), entitled "Terminology Used in Court Orders Affecting Employee Annuities or Refunds of Employee Contributions," which provides in pertinent part:

(a) This subpart regulates the meaning of terms necessary to award benefits in a court order directed at an employee annuity or a refund of employee contributions. OPM applies the meanings to determine whether a court order directed at an employee annuity or a refund of employee contributions is a court order acceptable for processing and to establish the amount of the former spouse's share of an employee annuity or a refund of employee contributions.

(b)(1) This subpart establishes a uniform meaning to be used for terms and phrases frequently used in awarding a former spouse a portion of an employee annuity or a refund of employee contributions.

9

(2) <u>This subpart informs the legal community about the definitions to apply terms used in drafting court orders so that the resulting court orders contain the proper language to accomplish the aims of the court</u>.

(Emphasis added.) The quoted regulatory provisions were the same in 1997, when the original divorce decree was entered, and in 2008 when the "Court Order Acceptable for Processing" was entered.

Based on these regulatory provisions, we conclude that the federal government has not attempted to "override" the terms of state court orders entered pursuant to divorce, as Husband asserts, but instead the federal government has specified the construction that will be applied to the terms contained in such orders. We note that both parties herein were represented by counsel at the time of the 1997 judgment. Counsel and the parties are presumed to have known the effect of these regulatory provisions when drafting and agreeing to the parties' settlement and judgment. *See*, *e.g.*, *Roberts v. Bailey*, 470 S.W.3d 32, 41 n.7 (Tenn. 2015) ("Knowledge of the law is presumed."). We also note that the 2008 order, which effectuated the terms of the 1997 judgment, specifically referred to "part 838 of Title 5, Code of Federal Regulations," confirming that "terminology used in the provisions of this order that concern benefits under the Civil Service Retirement System Retirement are governed by the standard conventions established in that part."

Ergo, based on the terms of the 2008 order, as explained by the provisions of 5 C.F.R. §838.622, Wife's share of Husband's federal retirement annuity should properly be adjusted for salary adjustments and cost-of-living adjustments. Because the trial court's order granting Rule 60.01 relief purported to remove these adjustments from Wife's share, it impermissibly modified the parties' 1997 settlement agreement and the resulting divorce judgment. As our Supreme Court has explained: "Rule 60.01 is designed to afford relief in cases in which the judgment or order, either standing alone or when viewed in connection with other portions of the record, shows <u>facial errors arising from oversight or omission</u>." *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976) (emphasis added). By way of example, such relief has been allowed when the defendant's name was listed incorrectly on a final judgment; to interpret a provision in a parenting plan order that was ambiguous on its face; and when the order inadvertently granted a nonsuit regarding all claims, rather than the one type of claim intended to be nonsuited. *See Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986); *Battleson v. Battleson*, 223 S.W.3d 278, 288 (Tenn. Ct. App. 2006); *SecurAmerica Business Credit v. Schledwitz,* No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *9 (Tenn. Ct. App. Aug. 26, 2011). No such facial error has been demonstrated in this case with regard to either the 1997 judgment or the 2008 order.

Husband argues that the trial court properly granted him relief based upon the

Texas Court of Appeals decision in *Cox v. Carter,* 145 S.W.3d 361, 366 (Tex. Ct. App. 2004). We note, however, that decisions from other states may be persuasive authority but are not binding on this Court. *See Ottinger v. Stooksbury,* 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006). Having determined that the trial court impermissibly granted relief to Husband pursuant to Tennessee Rule of Civil Procedure 60.01, we vacate the court's July 7, 2016 order. By virtue of this ruling, Wife's additional issue is pretermitted as moot.

## V. Post-Judgment Facts

Husband filed a motion pursuant to Tennessee Rule of Appellate Procedure 14, asking this Court to consider post-judgment facts regarding the construction applied by OPM to the trial court's July 7, 2016 order and the dollar amount of Wife's monthly benefit following entry of that order. We determine that these facts do not affect the position of the parties or the subject matter of the action; therefore, we deny consideration of these post-judgment facts. *See* Tenn. R. App. P. 14(a). *See, e.g., Town of Dandridge v. Patterson,* 827 S.W.2d 797, 802 (Tenn. Ct. App. 1991).

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's July 7, 2016 order granting relief to Husband pursuant to Tennessee Rule of Civil Procedure 60.01. We remand this matter to the trial court for collection of costs incurred below. Costs on appeal are taxed to the appellee, Hal David King.

_____
THOMAS R. FRIERSON, II, JUDGE

11