IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 9, 2020 Session

## DEBORAH D. BARTLEY ET AL. v. TINY NUNLEY, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ANTHONY GENE NUNLEY

Appeal from the Chancery Court for Carter County
No. 29844     John C. Rambo, Chancellor

No. E2019-01694-COA-R3-CV

This appeal arose from a dispute between relatives concerning the ownership of improved real property.  The property at issue was conveyed in 2000 via warranty deed to a married couple, William and Jewel Nunley, and their adult son, Anthony Gene Nunley, each as tenants in common.  Following William Nunley's death in 2007, Anthony Nunley purchased his mother's interest in the property, executing a promissory note in the amount of $112,509.00 and a deed of trust secured by title to the property.[1]  In 2015, Jewel Nunley and Anthony Nunley executed a document stating that the remaining balance on the note was $37,509.00.  Anthony Nunley ("Decedent") died intestate in June 2016.  Decedent's surviving spouse, Tiny Nunley, filed a petition in the probate division of the Carter County Chancery Court ("probate court") and was granted letters of administration to act as the personal representative ("Personal Representative") of Decedent's estate ("the Estate").  Jewel Nunley filed a claim against the Estate for the balance owed on the promissory note, which was later settled and released by agreement. Personal Representative filed an action in the probate court to reform the deed and quiet title to the subject real property.  Two of Decedent's three adult sisters objected and filed an action in the Carter County Chancery Court ("trial court") to partition the property. The probate court transferred the reformation action to the trial court, treating Personal Representative's petition to reform the deed and quiet title as a compulsory counterclaim to the partition action.  The plaintiffs asserted that via the 2000 deed, the property was conveyed in part to William Nunley as a tenant in common with his one-third interest in the property then passing to his wife, Jewel Nunley, and their four children, including Decedent, through intestate succession.  Personal Representative contended that the use of the phrase, "tenants in common," in the 2000 deed had constituted a mutual mistake and that the parties had intended for William and Jewel Nunley to own one-half of the property as tenants by the entirety and for Decedent to own the other half as a tenant in

---

[1] Because several of the individuals involved in this lawsuit share a surname, we will at times refer to individuals by their first and last names for ease of reference and clarity.  No disrespect is intended.

common.  Averring that her position was supported by evidence of an oral agreement between Decedent and his parents, Personal Representative maintained that upon transfer of Jewel Nunley's interest to Decedent, he became the sole owner of the property.  The plaintiffs moved for a judgment on the pleadings and filed a motion *in limine*, requesting that the trial court exclude any testimony or parol evidence related to alleged oral agreements among the parties to the 2000 deed.  Following a hearing, the trial court granted the plaintiffs' motion *in limine*, finding that the deed was unambiguous and that admission of additional evidence of Decedent's intent would violate the parol evidence rule, the Dead Man's Statute, and the Statute of Frauds.  Accordingly, the trial court granted the plaintiffs' motion for judgment on the pleadings, finding that the deed conveyed title to the property at issue to Decedent and each of his parents as tenants in common and that William Nunley's one-third interest had transferred to his wife and children upon his death.  Upon Personal Representative's motion, the trial court certified the judgment as final pursuant to Tennessee Rule of Civil Procedure 54.02.  Personal Representative has appealed.  Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Mark S. Dessauer and Matthew F. Bettis, Kingsport, Tennessee, for the appellant, Tiny Nunley, individually and as Administratrix of the Estate of Anthony Gene Nunley.

Brett A. Cole, Johnson City, Tennessee, for the appellees, Deborah D. Bartley and Delilah J. Nunley.

### OPINION

### I.  Factual and Procedural Background

Following Decedent's death in June 2016, Personal Representative filed her petition for letters of administration in the probate court on July 1, 2016, averring, *inter alia*, that Decedent had died intestate and that he had been the sole proprietor of The Chair Factory, a furniture store located in Elizabethton, Tennessee.  The subject real property is described in the relevant deeds as "Lots 3 and 4 of Barfield Subdivision," located in Elizabethton ("the Property").  The Property had served as a warehouse for Decedent's furniture business prior to his death.  The probate court entered an order appointing Personal Representative and also finding her to be the sole beneficiary of the Estate in accordance with her petition.

2

The warranty deed primarily at issue was executed on August 22, 2000 ("the 2000 Deed") and operated to convey fee simple title in the Property from East Tennessee Chair Company, Inc., to William Nunley, Jewel Nunley and Decedent. The conveyance language at issue in the 2000 Deed stated:

THIS INDENTURE made and entered into on this the 22nd day of August, 2000, between EAST TENNESSEE CHAIR COMPANY, INC., party of the first part, and WILLIAM NUNLEY, JEWEL NUNLEY and ANTHONY NUNLEY, as tenants in common, parties of the second part.

The 2000 Deed was duly recorded by the Carter County Register of Deeds.

As the trial court found in its final judgment, it is undisputed that at the time of the 2000 Deed's execution, William and Jewel Nunley had "pledged their personal residence as collateral to borrow the funds to purchase the [P]roperty for $260,000." However, as the trial court also found, "[t]here is a dispute as to whether there was an agreement between [William and Jewel] Nunley and [Decedent] that [Decedent] would pay this debt and would then fully own the property."

On September 15, 2016, Jewel Nunley filed a verified claim against the Estate, alleging that at the time of his death, Decedent had owed a remaining balance of $46,705.59 due on a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust") encumbering the Property. She attached a copy of the Deed of Trust, which had been executed on May 23, 2013, by Decedent, conveying the Property to attorney T.J. Little, Jr., as trustee and to his successor in trust. The Deed of Trust also stated that title to the Property had been conveyed via quitclaim deed ("2013 Quitclaim Deed") on the same date from Jewel Nunley to Decedent. The 2013 Quitclaim Deed and the Deed of Trust had been duly recorded. Personal Representative initially filed an exception to the claim, and Jewel Nunley filed an amended claim with a revised balance in the amount of $40,974.34.

On April 21, 2017, Personal Representative filed in the trial court a complaint to reform the 2000 Deed and quiet title to the Property. Personal Representative requested that "[t]he Deed be reformed to show the intention of the parties and the Court declare [Decedent] the sole owner of the Warehouse property." She also requested that the trial court quiet title in the name of Decedent and that "[a]ll children of William Nunley be made parties to this lawsuit." Personal Representative averred that Decedent and his parents had entered into the 2000 Deed as grantees with the understanding that Decedent would pay off the mortgage encumbering the parents' residence and that Decedent would become the sole owner of the Property once he had paid his parents' indebtedness in full.

Personal Representative attached to her reformation complaint copies of the 2000 Deed; the 2013 Quitclaim Deed; the Deed of Trust; the Note, setting forth Decedent's promise to pay $112,509.00 secured by the Deed of Trust; an August 2015 "Agreed Receipt and Balance on Deed of Trust," reflecting a remaining balance due under the Note, agreed to by Jewel Nunley and Decedent, in the amount of $37,509.00 ("2015 Agreement"); and a "Contract to Purchase Real Estate" concerning the Property ("Contract to Purchase"), which had been executed on May 23, 2013, between Jewel Nunley as the seller and Decedent as the buyer. The terms of the Contract to Purchase provide in pertinent part:

1.    The agreed purchase price for said real property shall be of the payment in full of indebtedness owed on Loan Number 01-06-026589, to Security Federal Savings Bank, in the approximate amount of $116,000.00, secured by Deed of Trust against the premises of Jewel Nunley. It was and is the understanding between the parties hereto at the time of the purchase of the above premises that the SELLER and her late husband would secure a loan against their home to purchase the premises and that the BUYER would discharge said indebtedness in full.

2.    The said purchase price shall be paid as follows upon receipt of evidence of payment in full of the note hereinabove referenced, SELLER will deliver to BUYER a Quitclaim Deed for all her right, title and interest in and to the property.

* * *

7.    This Agreement shall inure to the benefit of, and shall be binding upon, the respective parties and their heirs, personal representative, successors and assigns.

On May 22, 2017, two of Decedent's sisters, Deborah D. Bartley and Delilah J. Nunley, filed in the probate court a motion to dismiss Personal Representative's reformation action on the basis of (1) lack of subject matter jurisdiction in the probate court; (2) lack of standing for Personal Representative to file the petition; and (3) failure to join necessary parties, particularly Jewel Nunley and Snap-On, Inc. ("Snap-On"), which they averred held a leasehold interest in the Property. On May 23, 2017, Jewel Nunley filed a release of her claim against the Estate upon having received payment from the Estate for the balance due on the promissory note. Filing in the trial court, Personal Representative replied to the motion to dismiss her reformation action on June 26, 2017,

4

asserting that the trial court had subject matter jurisdiction, that Personal Representative had standing because the Property was part of the Estate, and that neither Jewel Nunley nor Snap-On was a necessary party because Jewel Nunley had released her claim against the Estate and Snap-On did not possess a leasehold interest in the Property.

Ms. Bartley and Delilah Nunley (collectively, "Plaintiffs") filed a complaint for partition of the Property by sale, pursuant to Tennessee Code Annotated § 29-27-101 (2012 & Supp. 2019) *et seq.*, in the trial court on July 6, 2017. They named as defendants Tiny Nunley, both individually and as Personal Representative of the Estate; Diana N. Gorman, Decedent's third sister; and Snap-On. Plaintiffs averred in their complaint that the 2000 Deed unambiguously represented a conveyance of a one-third interest in the Property each to William Nunley, Jewel Nunley, and Decedent as tenants in common, meaning that, pursuant to Tennessee Code Annotated §§ 31-2-103 and 104 (2015), William Nunley's one-third share would have vested in his surviving spouse (Jewel Nunley) and each of their four children upon his death intestate. *See* Tenn. Code Ann. § 31-2-104 (providing that the surviving spouse's share of an intestate estate if there are also surviving children is "one-third (1/3) or a child's share of the entire intestate estate, whichever is greater.").

Plaintiffs posited in their complaint that given the prior respective ownership interests of Jewel Nunley and Decedent following William Nunley's death, the Property was owned as follows at that time: (1) Jewel Nunley, 8/18 interest; (2) Decedent, 7/18 interest; (3) Ms. Bartley, 1/18 interest; (4) Delilah Nunley, 1/18 interest; and (5) Ms. Gorman, 1/18 interest. Further positing that the 2013 Quitclaim Deed therefore conveyed to Decedent solely the 8/18 interest owned by Jewel Nunley at the time of its execution, Plaintiffs asserted that following that conveyance, the Property was owned as follows: (1) Decedent, 15/18 interest; (2) Ms. Bartley, 1/18 interest; (3) Delilah Nunley, 1/18 interest; and (4) Ms. Gorman, 1/18 interest. Plaintiffs attached to their complaint copies of the 2000 Deed; the 2013 Quitclaim Deed; the Contract to Purchase; and a map of a portion of Carter County referenced as the plat map in the relevant deeds.

In addition to requesting a partition of the Property by sale according to purported ownership interests, Plaintiffs asserted in their complaint a claim of unjust enrichment against Personal Representative and the Estate, alleging that Snap-On had been making lease payments to Decedent for an unspecified period of time with no portion remitted to Plaintiffs. In her answer to the partition complaint, filed on July 21, 2017, Personal Representative denied any knowledge of lease payments made by Snap-On and any unjust enrichment. Upon Plaintiffs' subsequent motion of voluntary dismissal, the trial court entered an order dismissing the claims against Snap-On without prejudice on September 28, 2017. Snap-On is not participating in this appeal.

5

In her answer, Personal Representative also objected to the legal conclusions contained in Plaintiffs' complaint, maintaining her position that Decedent was the sole owner of the Property at the time of his death. She listed affirmative defenses of the statute of limitations, accord and satisfaction, estoppel, laches, payment, release, and waiver. Personal Representative concomitantly filed three motions: one to dismiss the partition complaint; one to require Plaintiffs to post bond in an amount equal to or double the amount of the Property pursuant to Tennessee Code Annotated § 29-27-219 (2012); and one for a stay of the proceedings until her action to reform the deed and quiet title could be resolved. She also requested attorney's fees and discretionary costs. Plaintiffs filed a response objecting to Personal Representative's motions requesting bond and a stay.

Personal Representative subsequently filed a memorandum of law in support of her motion to stay, arguing in part that the trial court had subject matter jurisdiction to hear both actions because the probate court was a division of the chancery court. As Personal Representative noted in her memorandum, the same chancellor presided over both courts. Accordingly, the chancellor conducted a hearing on August 3, 2017, under the auspices of both the probate court and the trial court. The chancellor subsequently entered an order on August 24, 2017, transferring Personal Representative's action to reform the 2000 Deed and quiet title from the probate court to the trial court upon finding that the probate court was not the "appropriate forum" in which to consider the matter.[2] The trial court directed that Personal Representative's transferred complaint would be treated as a compulsory counterclaim to Plaintiffs' partition complaint. Denying Personal Representative's motions to post bond and to stay the partition complaint, the trial court also directed that it would first adjudicate Personal Representative's reformation counterclaim and then proceed to the partition action only if it found that Plaintiffs or other individuals possessed ownership interests in the Property.

On September 22, 2017, Plaintiffs filed an answer to Personal Representative's counterclaim, denying that Decedent was the sole owner of the Property at the time of his death and denying that the 2000 Deed did not reflect the intent of Decedent and his parents. Plaintiffs asserted as affirmative defenses (1) lack of ambiguity in the 2000 Deed; (2) no mutual mistake or unilateral mistake coupled with fraud that would allow for reformation of the 2000 Deed; (3) failure to plead mistake with particularity pursuant

---

[2] We note that pursuant to Tennessee Code Annotated § 16-16-201(a) (Supp. 2019), the chancery court in Carter County has "exclusive jurisdiction over the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships and all matters relating thereto . . . ." *See generally, In re Estate of Trigg*, 368 S.W.3d 483, 494 (Tenn. 2012). However, as the trial court here determined, probate matters are heard in the probate division of the Carter County Chancery Court. *See, e.g.*, *In re Conservatorship of Hudson*, 578 S.W.3d 896, 907 (Tenn. Ct. App. 2018).

6

to Tennessee Rule of Civil Procedure 9.02; (4) violation of the Statute of Frauds pursuant to Tennessee Code Annotated § 29-2-101(a)(4)-(5) (2012); (5) violation of the Dead Man's Statute, pursuant to Tennessee Code Annotated § 24-1-203 (2017), as barring introduction of evidence concerning agreements involving William Nunley or Decedent; (6) waiver through settlement of Jewel Nunley's claim against the Estate; (7) prejudice against Plaintiffs due to the passage of time and death of potential witnesses; and (8) laches.

Upon agreement of the parties, the trial court entered an order on October 19, 2017, joining Tiny Nunley individually as a necessary party when she had previously been a party solely in her representative capacity (hereinafter collectively, "Personal Representative"). On November 1, 2018, the trial court entered an order, taking notice that Personal Representative's original counsel had died, allowing her counsel's firm to withdraw from representation, and giving Personal Representative through the new year to retain substitute counsel. The trial court subsequently entered an order *sua sponte* on January 16, 2019, setting the case for trial and another order on January 25, 2019, finding that because Personal Representative had not filed notice of new representation, she would be considered *pro se* for trial.

On February 6, 2019, Plaintiffs filed a motion for judgment on the pleadings, pursuant to Tennessee Rule of Civil Procedure 12.03, requesting that Personal Representative's counterclaim to reform the deed and quiet title be dismissed. Plaintiffs also sought a declaration based on the pleadings that via the 2000 Deed, William Nunley, Jewel Nunley, and Decedent each acquired an undivided one-third ownership interest in the Property as tenants in common. They requested that the trial court declare that Ms. Bartley, Delilah Nunley, and Ms. Gorman each held a 1/18 interest in the Property "pursuant to the interest each inherited from William Nunley upon his death."

Plaintiffs concomitantly filed their motion *in limine*, requesting that upon a finding that the 2000 Deed was unambiguous, the trial court would enter a ruling that "all parol or extrinsic evidence seeking to construe and interpret the 2000 Warranty Deed and the title conveyed to the grantees thereby [would be] inadmissible." They asserted that "all testimony regarding transactions or statements by and among [Decedent], William Nunley, and Jewel Nunley" should be found inadmissible pursuant to the Dead Man's Statute and that "all testimony and all parol evidence regarding alleged agreements or understandings by and among William Nunley, Jewel Nunley, and [Decedent]" should be found inadmissible pursuant to the Statute of Frauds.

Acting through newly retained counsel, Personal Representative filed motions on February 13, 2019, seeking to continue a hearing that had been set concerning Plaintiffs' motions and to continue trial. In the meantime, upon agreement of the parties and

following a separate hearing, the trial court entered an order on February 20, 2019, dismissing without prejudice Ms. Gorman as a party to the case. During this hearing, Ms. Gorman announced through her individual counsel that she had executed and delivered a quitclaim deed conveying her ownership interest in the Property to Personal Representative. The trial court subsequently entered an order on February 27, 2019, granting Personal Representative's motions for continuance and setting dates for a hearing on Plaintiffs' motions and for trial.

Meanwhile, Personal Representative filed a motion to amend her answer to Plaintiffs' complaint on February 25, 2019. Relative to the partition action, Personal Representative sought to add the following affirmative defenses: (1) the statute of limitations pursuant to Tennessee Code Annotated § 28-3-110 (2017), (2) laches, (3) waiver, and (4) equitable estoppel. Alternatively, if the trial court were to find that Plaintiffs possessed legal interests in the Property, Personal Representative sought to have the trial court declare the value of those interests and determine that payment for value could be made to Plaintiffs in lieu of selling the Property.

Personal Representative concomitantly filed responses opposing Plaintiffs' motion for judgment on the pleadings and Plaintiffs' motion *in limine*. In her response opposing a judgment on the pleadings, Personal Representative postulated that the allegations in her reformation complaint, "when construed liberally in her favor by taking all factual allegations as true and giving her the benefit of all the inferences that can be reasonably drawn from the pleaded facts, state[] a claim for reformation of the Deed." Personal Representative alternatively argued that "genuine issues of material fact remain[ed] as to whether the Deed should be reformed on the grounds of mutual mistake." She attached to her response a transcript of a deposition taken from Mr. Little, the attorney who had been retained by Jewel Nunley in 2013 to prepare the Contract to Purchase and 2013 Quitclaim Deed. Personal Representative also cited excerpts from Mr. Little's deposition testimony in her response.

On March 18, 2019, Plaintiffs filed a response to Personal Representative's motion to amend, arguing that because the motion to amend was filed nineteen months after the answer was filed and because the case was set for trial in August 2019, it would be prejudicial to Plaintiffs to allow Personal Representative to amend her answer to add affirmative defenses. Plaintiffs simultaneously filed replies to Personal Representative's responses to their motions *in limine* and for judgment on the pleadings, arguing, *inter alia*, that the trial court should solely consider the pleadings and that because the language at issue in the 2000 Deed was purportedly unambiguous, "the only conclusion that [could] be drawn from the pleadings [was] that the grantees under such Deed received title to the Warehouse Property as tenants in common . . . ." Following a hearing, the trial court entered an order on April 3, 2019, granting Personal

Representative's motion to amend her answer to add additional affirmative defenses and an alternate request for relief and approving an agreement concerning the additional time for production of documents requested by Plaintiffs.

The trial court subsequently entered its order granting Plaintiffs' motion for judgment on the pleadings and dismissing Personal Representative's counterclaim to reform the deed on July 17, 2019. In this order, the trial court also determined that "[t]he statements by and among [Decedent], William [Nunley], and Jewel Nunley are Barred under the Dead Man's Statute"; "[u]nder the Statute of Frauds, the agreements and undertakings, other than 2000 Warranty Deed, are not admissible"; and "[t]he 2000 Warranty Deed is not Subject to Reformation in Light of the 2013 Purchase Contract." Noting the parties' agreement that the "meaning of the language creating the original tenancy" in the 2000 Deed also controlled the interest of each of the instant parties, the trial court determined that the 2000 Deed was unambiguous in creating a tenancy in common among William Nunley, Jewel Nunley, and Decedent. The trial court thereby declared that at the time of his death, Decedent owned a 5/6, or 15/18, interest in the Property and that his three sisters—Ms. Bartley, Delilah Nunley, and Ms. Gorman—each owned an undivided 1/18 interest in the Property.

Upon Personal Representative's motions, the trial court entered an order on September 11, 2019, certifying the July 2017 judgment as final, pursuant to Tennessee Rule of Civil Procedure 54.02, and staying further proceedings in the trial court pending appeal. Personal Representative timely appealed.

## II. Issues Presented

Personal Representative raises three issues on appeal, which we have restated slightly as follows:

1.  Whether the trial court erred by granting Plaintiffs' motion for judgment on the pleadings and dismissing Personal Representative's counterclaim to reform the deed.

2.  Whether the trial court erred by finding that the language of the conveyance in the 2000 Deed was not ambiguous.

3.  Whether the trial court erred by granting Plaintiffs' motion *in limine* based on the Tennessee Statute of Frauds, the parol evidence rule, and the Tennessee Dead Man's Statute.

Plaintiffs raise two additional issues, which we have restated as follows:

9

4.     Whether, if this Court determines that the trial court erred in excluding evidence found inadmissible in response to Plaintiffs' motion *in limine*, the 2013 Quitclaim Deed and the 2015 Agreement should also be admitted.

5.     Whether the trial court properly applied the standard for a motion for judgment on the pleadings and, if not, whether Personal Representative's counterclaim should be dismissed under the summary judgment standard.

### III.  Standard of Review

This Court has previously explained that "[w]hen reviewing orders granting a Tenn. R. Civ. P. 12.03 motion [for judgment on the pleadings], we use the same standard of review we use to review orders granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). As our Supreme Court has elucidated concerning a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss:

> The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997).  When reviewing a dismissal of a complaint under Rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. *See, e.g., Doe v. Sundquist*, 2 S.W.3d at 922. Because a motion to dismiss a complaint under Rule 12.02(6) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See, e.g.*, *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002).

*Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003).

### IV.  Judgment on the Pleadings versus Summary Judgment

Personal Representative contends that when the trial court granted Plaintiffs' motion *in limine*, the court "refused to consider any other documents or deposition

testimony that were either exhibits to or outside of the pleadings when it granted Plaintiffs' motion for summary judgment on the pleadings . . . ." Personal Representative essentially argues that the trial court failed to properly apply the standard applicable to a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings because the court failed to accept as true all of the allegations in her reformation complaint. *See Young*, 130 S.W.3d at 63 (explaining that in reviewing a trial court's decision on a Rule 12.03 motion for judgment on the pleadings, as in reviewing a Rule 12.02(6) motion to dismiss, "we must construe the complaint liberally in favor of the non-moving party and take all the factual allegations in the complaint as true."). However, Personal Representative also asserts that because Mr. Little's deposition testimony, attached to her response to the motion for judgment on the pleadings, "was not excluded by the trial court," Plaintiffs' motion should be treated as one for summary judgment. In response, Plaintiffs contend in part that because "Personal Representative has no evidence to prove a different intent behind the 2000 deed or ***mutual*** mistake, either Summary Judgment or a Judgment on the Pleadings is appropriate." As a threshold matter and upon careful review, we determine that the trial court did not consider matters outside the pleadings and properly declined to convert Plaintiffs' motion for judgment on the pleadings to one for summary judgment.

Tennessee Rule of Civil Procedure 12.03 provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Generally, "[i]f matters outside the pleadings are presented in conjunction with either a Rule 12.02(6) motion [to dismiss] or a Rule 12.03 motion [for judgment on the pleadings] and the trial court does not exclude those matters, the court must treat such motions as motions for summary judgment and dispose of them as provided in Rule 56." *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007).

In this case, Personal Representative had initially attached to her reformation complaint, which upon transfer to the trial court became her counterclaim, copies of the 2000 Deed, the 2013 Quitclaim Deed, the 2013 Deed of Trust, the 2013 Note, the 2013 Contract to Purchase, and the 2015 Agreement. Given that Personal Representative sought to prove that the 2013 documents and 2015 Agreement demonstrated a different interpretation of the intent of the parties to the 2000 Deed than the language of the 2000

Deed would indicate, Personal Representative properly attached these documents pursuant to Tennessee Rule of Civil Procedure 10.03, which provides:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

These documents attached to Personal Representative's counterclaim thereby became part of her pleading. *See* Tenn. R. Civ. P. 10.03.

When Plaintiffs filed their initial motion to dismiss the reformation complaint in the probate court, they attached solely a copy of the 2013 Deed of Trust, which was already a part of Personal Representative's pleading. When Plaintiffs subsequently filed their partition complaint in the trial court, they attached copies of the 2000 Deed, the 2013 Quitclaim Deed, the 2013 Contract to Purchase, and a plat map of a relevant portion of Carter County. Although in this consolidated action, Plaintiffs' partition complaint was also a pleading, we note that the only exhibit attached by Plaintiffs that had not been included in Personal Representative's counterclaim was the plat map, which is a public record. *See W. Express, Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *3 (Tenn. Ct. App. Oct. 26, 2009) (delineating exceptions to the general rule, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" (quoting *Ind. State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009))).

Plaintiffs did not attach any documents or other exhibits to their motion for a judgment on the pleadings. However, Personal Representative attached the transcript of Mr. Little's deposition to her response to the motion for judgment on the pleadings, as well as citing excerpts of the deposition in her response. She also attached the exhibits to the deposition, all of which had been previously attached to pleadings except for Mr. Little's notes. Concerning the potential effect of attaching and referencing Mr. Little's deposition, Personal Representative expressly stated the following in her response:

[Personal Representative] has submitted the discovery deposition of T. J. Little in support of her opposition to the Plaintiffs' motion. If the deposition is not excluded by the Court, then Plaintiffs' motion should be treated as one for summary judgment. In such event, then consideration of the motion should be deferred as [Personal Representative] has not had adequate time for discovery or alternatively denied, as genuine issues of material fact remain with respect to [Personal Representative's] claim to reform the Deed.

We agree that if the trial court had considered Mr. Little's deposition transcript or his notes, the effect would have been to convert Plaintiffs' motion for a judgment on the pleadings to a motion for summary judgment. *See, e.g.*, *Patton*, 242 S.W.3d at 787 ("[T]he Plaintiffs and two of the Defendants presented extraneous evidence, and the [trial court] accepted the extraneous evidence which converted the Rule 12 motion into one for summary judgment."). However, we cannot agree with Personal Representative's contention that because the trial court did not expressly exclude the deposition transcript in its judgment, the motion must be converted to one for summary judgment. The trial court did not mention or reference the deposition transcript whatsoever in its judgment. Additionally, as Personal Representative acknowledges, the trial court found that pursuant to the Statute of Frauds, "the agreements and undertakings, other than [the] 2000 Warranty Deed," would not be admissible in this action, a ruling that clearly encompassed any testimony that Mr. Little could have offered concerning the circumstances surrounding the 2013 documents he drafted.

Upon careful consideration of the trial court's judgment in this action, we determine that the trial court did not consider Mr. Little's deposition transcript or his notes and therefore did not consider matters outside the pleadings. The trial court properly declined to convert Plaintiffs' Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings to a Tennessee Rule of Civil Procedure 56 motion for summary judgment.

## V. The 2000 Deed

In determining that Plaintiffs were each entitled to a 1/18 ownership interest in the Property, the trial court found the 2000 Deed to be "clear and unambiguous" and not a candidate for reformation. Personal Representative contends that the trial court erred by declining to recognize the omission in the 2000 Deed of the marital relationship between William Nunley and Jewel Nunley as a latent ambiguity. She argues that this latent ambiguity raises a question concerning whether the intent of the parties to the 2000 Deed was that each grantee would own a one-third interest in the Property as tenants in common or that William and Jewel Nunley would own a one-half interest in the Property

13

as tenants by the entirety while Decedent would own the other one-half interest. Personal Representative further contends that the trial court erred by failing to treat all of her assertions in the counterclaim as true and by declining to consider evidence beyond the 2000 Deed that the use of "tenants in common" in the conveyance was the result of mutual mistake in expression by the parties to the 2000 Deed.

Plaintiffs contend that the trial court properly found no latent ambiguity in the 2000 Deed and no relevant factual allegations in Personal Representative's complaint that, taken as true, would demonstrate a mutual mistake at the time of the 2000 Deed's execution. Upon thorough review of the record and applicable authorities, we conclude that the trial court did not err in determining that the 2000 Deed unambiguously created a tenancy in common among the three grantees. Moreover, because even when treating all of Personal Representative's factual allegations as true, William Nunley's intent at the time of the 2000 Deed's execution concerning which type of tenancy would be created cannot be demonstrated and the grantor's intent remains unknown, we conclude that the trial court properly determined that the 2000 Deed could not be reformed.

Concerning interpretation of a deed and the standard for reformation of a deed, this Court has recently explained:

> "A deed is a contract." *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996). In evaluating a deed, we apply certain established principles. *Id.* "The interpretation of a deed is a question of law," which we review *de novo. See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 466 (Tenn. 2012) (citations omitted). In interpreting a deed, courts ascertain the intention of the grantor from the words of the deed as a whole and from the surrounding circumstances. *Id.* "Contracts are to be judged by an objective standard, i.e., what a reasonable onlooker would conclude the parties intended from the words expressed in the instrument." *See Richards*, 926 S.W.2d at 572 (citation omitted). "It is well settled that a deed, regular on its face, and properly signed acknowledged, and recorded, will be reformed only upon the most satisfactory proof that it does not express the real intention of the parties; that is, what is known as clear, cogent, and convincing proof, or clear and indisputable proof." *Anderson v. Howard*, 74 S.W.2d 387, 390 (Tenn. Ct. App. 1934).

*In re Philip Roseman 2012 Irrevocable Gift Trust*, No. M2017-01994-COA-R3-CV, 2018 WL 3217245, at *4 (Tenn. Ct. App. July 2, 2018).

"Tennessee recognizes three basic forms of concurrent ownership in real property: joint tenancy, tenancy in common, and tenancy by the entirety." *Bryant v. Bryant*, 522

14

S.W.3d 392, 399 (Tenn. 2017). Concerning the distinctions among these forms of concurrent ownership, our Supreme Court has elucidated:

A tenancy by the entirety is held exclusively by persons who are legally married. It is ancient in origin and remains firmly established in Tennessee. *Griffin* [*v. Prince*], 632 S.W.2d [532,] 535 [(Tenn. 1982), *overruled on other grounds by In re Estate of Fletcher*, 538 S.W.3d 444 (Tenn. 2017)]; *see* Tenn. Code Ann. §§ 36-3-505, 31-1-108. Tenancy by the entirety is based on the concept that those who are married are not separate persons; rather, they "are but one person." *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ch. App. 1896) (quoting *Den v. Hardenbergh*, 10 N.J.L. 42, 45 (1828)); *see Taul v. Campbell*, 15 Tenn. (7 Yer.) 319, 333 (1835) (noting that a husband and wife "take but one estate, as a corporation would take, being by the common law deemed but one person"). Consequently, co-tenants in a tenancy by the entirety do not hold their interest by moieties (by parts), they hold by the entirety: "Each is not seised of an undivided moiety, but both are . . . seised of the whole. They are seised, not *per my et per tout* [by the half and by the whole], but solely and simply *per tout* [by the whole]." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45).

When property is held in a tenancy by the entirety, upon the death of one spouse, the survivor continues to own the whole in fee simple. Technically, then, the surviving spouse does not acquire the fee simple interest through a right of survivorship; the survivor "enjoys the whole [after the death of the other spouse], . . . not because any new or further estate or interest becomes vested, but because of the original conveyance, and of the same estate and same quantity of estate as at the time the conveyance was perfected." *Id.* (quoting *Den*, 10 N.J.L. at 45) (explaining that "[b]etween husband and wife, the *jus accrescendi* [right of survivorship] does not exist"); *see Cole Mfg. Co. v. Collier*, 95 Tenn. 115, 31 S.W. 1000, 1001 (1895); *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695, 698 (1956); *Taul*, 15 Tenn. (7 Yer.) at 336-37.

At common law, the primary difference between holding in joint tenancy and tenancy in common is that joint tenancy includes a right of survivorship between the co-tenants by operation of law, whereas tenancy in common does not. *See Peebles* [*v. Peebles*], 443 S.W.2d [469,] 470 [(Tenn. 1969)]; *Bunch* [*v. Bunch*], [No. 02A01-9705-CH-00106,] 1998 WL 46217, at *1 [(Tenn. Ct. App. Jan. 8, 1998)]. While a tenancy by the entirety can consist only of two persons seized of one estate, both joint

tenancy and tenancy in common "impl[y] a plurality of persons" and "each of the owners has an undivided moiety, or other proportional part, of the whole premises." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45); *see Taul*, 15 Tenn. (7 Yer.) at 336 (citation omitted) (noting that, unlike a tenancy by the entirety, "[t]he estate of joint tenants is [a] unit, made up of divisible parts subsisting in different natural persons").

> "Tenants in common are jointly seized of the whole estate, each having an equal right of entry and possession . . . ." *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695, 697 (1956). Right of survivorship is not an incident of tenancy in common; however, the grantor may include in the instrument of conveyance express language attaching a right of survivorship to the tenancy in common. *See Runions* [*v. Runions*], 207 S.W.2d [1016,] 1017 [(Tenn. 1948)] ("Even a tenancy in common may have a right of survivorship attached to it if the grantor expresses an intention that it shall be so." (quoting *Mitchell v. Frederick*, 166 Md. 42, 170 A. 733, 735-36 (1934))).

*Id.* at 400-401 (footnotes omitted). We note that "the creation of a tenancy by the entirety can be rebutted only when a contrary intention is expressed in the instrument itself, as opposed to extrinsic evidence." *Smith v. Sovran Bank Cent. S.*, 792 S.W.2d 928, 930 (Tenn. Ct. App. 1990).

In finding that the language of the 2000 Deed unambiguously created a tenancy in common, the trial court stated in its judgment in pertinent part:

> In the present case, the language of the deed provides for an ownership as tenants in common. The deed states:

>> THIS I[N]DENTURE made and entered into on this the 22nd day of August, 2000, between EAST TENNESSEE CHAIR COMPANY, INC., party of the first part, and WILLIAM NUNLEY, JEWEL NUNLEY and ANTHONY NUNLEY, as tenants in common, parties of the second part.

> The language leaves no ambiguity because it plainly states the tenancy. The language here uses explicit, clear language of tenants in common in the deed to establish ownership. The intent of the parties is evidenced by the language from the deed that states the names followed by the legal phrase "tenants in common."

It is true that the deed fails to explain that Jewel and William [Nunley] were married. [Personal Representative] asserts the lack of words concerning marriage is evidence that the deed is latently ambiguous. As such, one could infer that the deed lacks clarity because there is no language to show the relationship of the parties or a clause to clarify the ownership. Nonetheless, the deed explicitly states that the tenancy is a tenants in common arrangement. Therefore, the language of the deed is clear and unambiguous.

Further, the language, here, does not leave any latent ambiguities because the language clearly states the intent of the parties. The deed uses the descriptive legal phrase, tenants in common, following the creation of the tenancy. *The 2000 Warranty Deed created a Tenancy in Common.*

* * *

Here, the deed uses the phrase "tenants in common" following the names of the parties who are in tenancy. Here, the plaintiffs argue the language is clear because it shows the tenancy and the parties in ownership, while [Personal Representative] argues that the tenancy was intended to be a tenancy by the entireties because William and Jewel [Nunley] were married when the tenancy was created and [Decedent] was going to take ownership. The instrument is assumed to be a tenancy in the entirety unless the instrument provides an intent to create a tenants in common. Comparable to *Myers* [*v. Comer*, 234 S.W. 325, 326 (Tenn. 1921)], the deed contains language that explicitly describes a tenancy in common. *Id.* at 481. The language, here, shows intent to describe a tenancy in common because the deed has language that uses the terms, tenants in common. Therefore, the 2000 Warranty Deed created a tenancy in common.

We agree with the trial court's determination.

In this case, the language of the 2000 Deed is clear and unambiguous in creating a tenancy in common among William Nunley, Jewel Nunley, and Decedent. Personal Representative postulates that under Tennessee law, because William and Jewel Nunley were married at the time of the 2000 Deed's execution, a presumption was created that "the interest in the Property owned by William Nunley and Jewel Nunley was as tenants by the entirety." In support of this position, Personal Representative relies on our Supreme Court's decision in *Bennett v. Hutchens*, 179 S.W. 629 (Tenn. 1915). In *Bennett*, the 1897 deed at issue listed the two grantees, who were married, by name but did not specify whether they would hold the property as tenants in common or tenants by

17

the entirety. *Bennett*, 179 S.W. at 630. The High Court determined that the deed created a tenancy by the entirety. *Id.* ("By the authorities it is held that a deed to husband and wife, which would at common law have created in them an estate in joint tenancy, had they not been married, does, by the fact of the marriage, create in the husband and wife an estate by the entireties."). More recently, in a case involving the "gap years" following passage of the Bejach Law, our Supreme Court explained that although during a time period spanning January 1, 1914, through April 15, 1919, "a conveyance of real property to a husband and wife created a tenancy in common, with no right of survivorship," "at all other times under the common law . . . such conveyance created a tenancy by the entirety with a right of ownership in the surviving spouse"). *Roberts v. Bailey*, 470 S.W.3d 32, 38 (Tenn. 2015).

The key distinction between cases falling under this common law rule and the case at bar is that the 2000 Deed at issue here specifically set forth the grantees as tenants in common.[3] The trial court analogized the factual situation here to that in *Myers v. Comer*, 234 S.W. 325, 326 (Tenn. 1921), wherein the deed in question conveyed property to a husband and wife "'jointly and severally in equal moities.'" Our Supreme Court determined that because these words "denote[d] that it was the intention of the grantor that the grantees should take and hold the land in joint and severable equal shares," "[t]his would prevent the grantees from taking as tenants by the entirety." *Id.* Contrary to Personal Representative's assertion, we do not discern any latent ambiguity in the omission of the marital relationship between two of the grantees in the 2000 Deed.[4] Inasmuch as the 2000 Deed specifically set forth that William Nunley, Jewel Nunley, and Decedent would own the Property as tenants in common, the trial court properly concluded that the 2000 Deed unambiguously created a tenancy in common among the

---

[3] Our Supreme Court has recently noted that the common law rule of "a joint tenancy incidentally and implicitly includ[ing] a right of survivorship" has never been adopted by Tennessee in its statutory scheme. *Estate of Haire v. Webster*, 570 S.W.683, 691 n.12 (Tenn. 2019).

[4] This Court has defined a latent ambiguity in a contract as follows:

> A latent ambiguity is one where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used. *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484 (1908).

*Moore & Assocs. Memphis LLC v. Greystone Homeowners Ass'n Inc.*, No. W2016-00721-COA-R3-CV, 2017 WL 244112, at *4-5 (Tenn. Ct. App. Jan. 20, 2017) (quoting *Ward v. Berry & Assoc.*, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981)).

three grantees with each owning an undivided one-third interest. *See id.* ("It is also the general rule governing the construction of deeds, when it is sought to determine what estate was conveyed thereby, to ascertain the intention of the parties, if possible, by giving to each word of the deed its appropriate meaning and enforce that intention.").

In determining that the reformation of the 2000 Deed requested by Personal Representative was not possible, the trial court found in its judgment in relevant part:

> Here, [Personal Representative] seeks to reform the 2000 warranty deed to reflect the alleged original intent of William [Nunley], Jewel [Nunley] and [Decedent] that either survivor spouse would have a one-half interest in the property that could be sold to [Decedent] as reflected by the assertion that [Decedent] acquired full title with the 2013 Contract to Purchase. This is a request of the Court that requires the Court to rewrite the 2000 deed, not merely reform it. If the Court attempted to reform the 2000 Warranty Deed, the change will likely reflect the intention of two parties, Jewel [Nunley] and [Decedent], at the time of the purchase contract in 2013. However, the reform will not represent all parties' interest. The 2013 Contract was made after the death of William [Nunley], years after the original deed. Therefore, the interests and agreement between all three parties is likely not reflected in the 2013 Contract. Furthermore, the Court will lack testimony of two of the three parties who obtained ownership. In conclusion, the Court will not reform the deed because [Personal Representative] will not be able to show a mistake with clear evidence as two parties are deceased and the contract only concerns two of the parties years after the original deed.

The trial court thus found that William Nunley's intent at the time of the 2000 Deed's execution could not be known and could not be demonstrated by the evidence of subsequent agreements between Jewel Nunley and Decedent that Personal Representative sought to present. Upon careful review, we agree with the trial court on this point as well.

Regarding the reformation of a written agreement, such as the 2000 Deed at issue here, this Court has articulated:

> [I]t is well settled that the courts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain. The courts are also empowered to modify the provisions of a written contract where only one of the parties

19

was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud.

The judicial alteration of the provisions of a written agreement is an equitable remedy known as "reformation." The basic purpose of reformation is to make the contract "conform to the real intention of the parties." It is "driven by a respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties." Because the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence. Instead, the evidence of mistake must be clear and convincing.

An important subcategory of mistake is mistake in the expression, or integration, of the agreement. A mistake in expression occurs where one or both parties to a written contract erroneously believe that the contract embodies the agreement that both parties intended it to express. In such cases, the courts may adjust the provisions of the written contract to make it express the true agreement reached by the parties.

In order to obtain reformation on the basis of mistake in expression, a party must present clear and convincing evidence that: (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation. Reformation is not automatically barred simply because one of the parties denies that there was an antecedent agreement or claims that the mistake was not mutual.

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286-88 (Tenn. Ct. App. 2006) (footnotes and internal citations omitted).

As Plaintiffs have asserted on appeal, the parties to the 2000 Deed included the grantor, The Chair Factory, as well as the three grantees. Personal Representative has made no factual assertions regarding whether The Chair Factory intended to convey the Property to the grantees as an equally divided, three-part tenancy in common or as a two-part tenancy in common with one-half of the ownership interest as a tenancy by the entirety. *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962) (defining a mutual mistake as "a mistake common to all the parties to the written contract or the instrument

or in other words it is a mistake of all the parties laboring under the same misconception.").  Inasmuch as the grantees were the parties whose rights were affected by the distinction, for purposes of this analysis and in light of the issues raised by Personal Representative, we will confine our consideration of intent at the time of the 2000 Deed's execution to the grantees.  However, we note that in the event that the reformation action had proceeded to trial, the intent of The Chair Factory at the time of the 2000 Deed's execution also would have been relevant.

Personal Representative posits that if the trial court had considered all of the factual allegations in her reformation complaint as true, pursuant to the Rule 12.03 standard for a judgment on the pleadings, the court would have found that her allegations revealed a mutual mistake in the use of the language, "tenants in common," in the 2000 Deed.  However, in her complaint and in her argument, Personal Representative relies heavily on documents and assertions related to documents created and executed in 2013 and 2015, long after the 2000 Deed had been executed and long after one of its three grantees, William Nunley, had died in 2007.  The only factual allegation in Plaintiff's complaint concerning William Nunley's intent <u>at the time of the 2000 Deed's execution</u> is the following paragraph:

> [Personal Representative] avers that [Decedent] entered into an agreement with his parents, William Nunley and wife, Jewel Nunley to purchase a warehouse for $260,000.00 from East Tennessee Chair Company, and that William Nunley and wife, Jewel Nunley would use their home to borrow the money for said purchase and that [Decedent] would pay back the indebtedness and he would own the property outright.

(Paragraph numbering omitted.)

We emphasize that in order to reform the 2000 Deed based on a mutual mistake, Personal Representative would have to be able to demonstrate that the mistake occurred at the time of the deed's execution.  *See Sikora*, 212 S.W.3d at 288 n.13 ("To reform a contract based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation." (quoting 27 WILLISTON ON CONTRACTS § 70:93, at 495)); *see, e.g., Hitchcock Metal Sources, Inc. v. Mulford*, No. E2003-00738-COA-R3-CV, 2004 WL 178390, at *6 (Tenn. Ct. App. Jan. 29, 2004) (affirming the trial court's denial of the plaintiff's request to reform the parties' contract upon concluding that "the essential element" of mutual mistake had not been met).

Even when taken as true, Personal Representative's allegation does not set forth whether William Nunley intended to own the Property prior to Decedent's payment of

the indebtedness as equal tenants in common with Jewel Nunley and Decedent or, as Personal Representative contends, as a one-half tenancy by the entirety with Jewel Nunley with the other one-half interest vested in Decedent. The allegation merely sets forth an agreement that once Decedent paid off the debt, he would own the Property "outright." Nothing is set forth in the complaint concerning William Nunley's intent in the event that he died before the completion of the agreement, which he unfortunately did. Ergo, the trial court did not err in determining that Personal Representative had failed to present a viable claim for reformation of the 2000 Deed.

## VI. Motion *in Limine*

Personal Representative has also raised an issue concerning whether the trial court erred by granting Plaintiffs' motion *in limine* upon finding documents and testimony inadmissible based on the Tennessee Statute of Frauds, the parol evidence rule, and the Tennessee Dead Man's Statute. In response, Plaintiffs have raised an issue specifically regarding the 2013 Quitclaim Deed and the 2015 Agreement if this Court were to conclude that the trial court had erred in granting the motion *in limine*. Having determined that the trial court did not err by granting Plaintiffs' motion for judgment on the pleadings based on the plain language of the 2000 Deed and the lack of any available evidence concerning William Nunley's intent in entering into a tenancy in common, we further determine that the parties' issues pertaining to the motion *in limine* are pretermitted as moot.

## VII. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We remand this case for enforcement of the judgment, further proceedings consistent with this opinion, and collection of costs below. Costs on appeal are taxed to the appellant, Tiny Nunley, individually and as Administratrix of the Estate of Anthony Gene Nunley.

_____
THOMAS R. FRIERSON, II, JUDGE

22